2007 UT 45

**Joel SILL, Plaintiff and Respondent,**

v.

**Bill HART dba Hart Construction, Defendant and Petitioner.**

**Nos. 20060106, 20060208.**

Supreme Court of Utah.

June 8, 2007.

1100

David B. Thompson, Christina Inge Miller, Park City, David L. Arrington, Salt Lake City, for plaintiff.

Robert J. Dale, P. Bruce Badger, Bradley L. Tilt, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## BACKGROUND

¶ 1 This case involves a dispute between a property owner and a contractor in the construction of a private residence. Joel Sill, a residential property owner, entered into an agreement with Bill Hart, a general contractor, to construct a custom home in Summit County. Construction of the residence began in June 1999 and continued until December 2001 when the parties had a falling-out regarding completion of the residence. Hart stopped work on Sill's property, leaving the residence unfinished. In response, Sill filed this suit alleging various claims including breach of contract. Hart counterclaimed alleging breach of contract and unjust enrichment and seeking to foreclose a mechanics' lien for work for which Hart had yet to be paid. More than two and a half years after the suit was initiated, Sill challenged the enforceability of Hart's mechanics' lien for failing to meet the notice requirements of section 38–1–11(4)(a) of the Mechanics' Lien Act.[1] The parties stipulated that all issues concerning the enforceability of the lien would be preserved until after the jury reached a verdict at trial. Following the trial, the jury awarded Hart $314,500 for his unjust enrichment and mechanics' lien claims

---

1. At the time Hart filed the mechanics' lien, Utah Code section 38–1–11(4)(a) required a party seeking to execute a lien against a residence to include with the service of the complaint upon the owner of the residence "instructions to the owner of the residence relating to the owner's rights under" the Residence Lien Restriction and Lien Recovery Fund Act (LRFA) and "a form affidavit and motion for summary judgment to enable the owner of the residence to specify the grounds upon which the owner may exercise available rights under" LRFA. Utah Code Ann. § 38–1–11(4)(a)(i), (ii) (2001) (amended Supp.2006).

The Mechanics' Lien Act, *id.* §§ 38–1–1 to –29 (2001) (amended 2005 & Supp.2006), "provide[s] protection to those who enhance the value of a property by supplying labor or materials," *AAA Fencing Co. v. Raintree Dev. & Energy Co.,* 714 P.2d 289, 291 (Utah 1986); *see also* Utah Code Ann. § 38–1–3, while LRFA, *id.* §§ 38–11–101 to –302 (2001) (amended 2005 & Supp.2006), provides a narrow statutory framework for the protection of residential property owners. *Id.* § 38–11–107. LRFA allows owners to avoid incurring costs associated with litigation due to unwarranted mechanics' liens. *Id.*

and included an award for prejudgment interest, attorney fees, and costs.

¶ 2 When Hart sought to reduce the jury verdict to a judgment, the court considered Sill's challenge to the validity of the mechanics' lien. Hart admitted that he did not serve Sill with any of the required forms or instructions informing the owner of his LRFA rights as required by section 38–1–11(4)(a) (2001). He argued, however, that the notice requirements did not apply to this case because (1) Sill, the owner, not Hart, the contractor, commenced the action; (2) Sill had no rights under LRFA because Hart was not a subcontractor; and (3) Hart, the general contractor, had not been paid in full. Sill argued that Hart's failure to serve him with the notice requirements of section 38–1–11(4)(a) created a complete jurisdictional bar to the enforcement of the lien.

¶ 3 The trial court concluded that Hart was not required to comply with the notice requirements of section 38–1–11(4)(a) because he filed a counterclaim, not a complaint. Accordingly, the court enforced his mechanics' lien. The court of appeals reversed, concluding that the notice requirements of section 38–1–11(4)(a) are triggered whenever an action is filed seeking to enforce a lien on a residence, regardless of whether the lien claimant files a complaint or a counterclaim. *Sill v. Hart,* 2005 UT App 537, ¶ 9, 128 P.3d 1215. The court of appeals rejected Sill's assertion that failure of a lien claimant to comply with section 38–1–11(4)(a) is a jurisdictional bar and concluded instead that the failure constitutes an affirmative defense. *Id.* ¶¶ 14–15.

¶ 4 We granted certiorari to determine whether the requirements of Utah Code section 38–1–11(4)(a) apply to counterclaims, whether those requirements apply regardless of the remedies available to a property owner under LRFA, and whether a failure to comply with section 38–1–11(4)(a) creates a jurisdictional bar to adjudication of an action to enforce a lien. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a), (5) (2002).

## STANDARD OF REVIEW

 ¶ 5 "On certiorari, we review the decision of the court of appeals, not the trial court." *Fla. Asset Fin. Corp. v. Utah Labor Comm'n,* 2006 UT 58, ¶ 8, 147 P.3d 1189 (internal quotation marks omitted). This case presents an issue of statutory interpretation, a question of law that we review for correctness. *Id.*

## ANALYSIS

¶ 6 Hart argues that the court of appeals' determination that the notice requirements of section 38–1–11(4)(a) extend to counterclaims should be reversed. He also argues that the notice requirements do not apply and therefore do not need to be complied with when an owner has no available rights under LRFA. Additionally, Hart argues that failure to comply with section 38–1–11(4)(a) creates an affirmative defense, not a jurisdictional bar. We agree with each of his arguments.

 ¶ 7 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Ret. Bd.,* 2007 UT 16, ¶ 8, 157 P.3d 797 (internal quotation marks omitted). We read "[t]he plain language of a statute . . . as a whole" and interpret its provisions "in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *State v. Schofield,* 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotation marks omitted). We do so because " '[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.' " *State v. Maestas,* 2002 UT 123, ¶ 54, 63 P.3d 621 (quoting Norman J. Singer, 2A Sutherland *Statutory Construction* § 96:05 (4th ed.1984)).

 ¶ 8 The purpose and intent of Utah's Mechanics' Lien Act, Utah Code Ann. §§ 38–1–1 to –29 (2001), " 'manifestly has been to protect, at all hazards, those who perform the labor and furnish the materials which enter into the construction of a build-

ing or other improvement.'" *John Wagner Assocs. v. Hercules, Inc.*, 797 P.2d 1123, 1125 (Utah Ct.App.1990) (quoting *Rio Grande Lumber Co. v. Darke*, 50 Utah 114, 167 P. 241, 244 (1917)). Lien statutes should be broadly construed "to effectuate that purpose." *Interiors Contracting v. Navalco*, 648 P.2d 1382, 1386 (Utah 1982). The broad remedial powers of the Mechanics' Lien Act, however, have been tempered by enactment of LRFA and the legislature's recognition of the competing interest of owners of residential property to keep their credit and title to the property clear of unwarranted encumbrances.

¶ 9 Thus, the Mechanics' Lien Act requires certain acts by lien claimants in order to protect owners of residential property. Section 38–1–11(4) (2001) provides:

(a) If a lien claimant files an action to enforce a lien filed under this chapter involving a residence ... the lien claimant shall include with the service of the complaint on the owner of the residence:

(i) instructions to the owner of the residence relating to the owner's rights under Title 38, Chapter 11, [LRFA]; and

(ii) a form affidavit and motion for summary judgment to enable the owner of the residence to specify the grounds upon which the owner may exercise available rights under Title 38, Chapter 11, [LRFA].

. . .

(e) If a lien claimant fails to provide to the owner of the residence the instructions and form affidavit required by Subsection (4)(a), the lien claimant shall be barred from maintaining or enforcing the lien upon the residence.[2]

■ ¶ 10 The first issue we must resolve is whether the notice requirements of section 38–1–11(4)(a) apply to counterclaims. We conclude that they do not. It has long been established that the purpose of the Mechan-

ics' Lien Act is "to provide protection to those who enhance the value of a property by supplying labor or materials." *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986). We have also recognized the "modern trend" in mechanics' lien cases "to dispense with arbitrary rules which have no demonstrable value in a particular fact situation." *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 744 (Utah 1990) (upholding lien against attack where deficiencies were technical and did not prejudice the defendant). It is against this backdrop that we consider the notice requirements of section 38–1–11(4)(a).

■ ¶ 11 The pertinent language of section 38–1–11(4)(a) provides, "If a lien claimant *files an action* to enforce a lien filed under this chapter involving a residence ... the lien claimant shall include with the *service of the complaint on the owner of the residence* ..." (emphasis added). Looking to the plain language of the statute, "we assume that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *State v. Bluff*, 2002 UT 66, ¶ 34, 52 P.3d 1210 (internal quotation marks omitted). The plain language of section 38–1–11(4)(a) supports the trial court's interpretation that the notice requirements are applicable only at the initiation of an action through service of a complaint, not a counterclaim. The language is not ambiguous. The "fil[ing of] an action" is qualified by the reference to the "service of the complaint on the owner of the residence." Thus, a "complaint" refers to a pleading that is filed by a plaintiff at the commencement of a lawsuit requiring service, not on an attorney, but on an individual at his residence. The filing of such an "action" does not include liens enforced by counterclaim where the action has already been commenced and the service of the lien is on the residential property owner's legal counsel.[3]

---

2. Since 2001, section 38–1–11 of the Mechanics' Lien Act has been amended so that it no longer requires service of a summary judgment motion form. *See* Utah Code Ann. § 38–1–11(5)(a) (Supp.2006).

3. Contrary to Sill's assertion, the court of appeals did not decide this question in *American Rural Cellular, Inc. v. Systems Communication Corp.*, 939 P.2d 185 (Utah Ct.App.1997). In that case, the court held that the word "action" included complaints as well as counterclaims. *Id.*

¶ 12 This narrow reading of "action" is also supported by the overarching purpose of the Mechanics' Lien Act and the narrow protection LRFA is intended to provide. As noted previously, the purpose of the Mechanics' Lien Act is to protect original contractors, subcontractors, and others who enhance the value of real property through improvements. LRFA also protects residential property owners against the substantial costs associated with litigation arising from an unwarranted mechanics' lien. Utah Code Ann. § 38–11–107 (2001). Thus, the need for LRFA protection exists when actions are commenced by a lien claimant, before litigation costs have been incurred by the property owner. Such actions are commenced when a complaint is filed and served on a property owner. *See* Utah R. Civ. P. 3(a) ("A civil action is commenced by (1) filing a complaint ... or (2) by service of a summons together with a copy of the complaint...."). The notice requirements of section 38–1–11(4)(a) simply do not apply to liens sought to be enforced through counterclaims because any benefit that could be derived from LRFA protections has been relinquished by the property owner who has already initiated legal proceedings. In this case, because Sill had already hired an attorney, initiated legal action, and incurred costs, the protections provided by LRFA would not, and were not intended to, benefit him. Moreover, service of the counterclaim was required by the Rules of Civil Procedure to be on Sill's counsel, not the "owner of the residence." Utah Code Ann. § 38–1–11(4)(a). Any benefit that Sill could have derived from the notice requirements was clearly moot at that juncture. Instructions informing him how to defeat the lien without significant litigation costs were irrelevant because he had already hired an attorney and engaged in litigation by initiating this action against the contractor.

¶ 13 While the use of the word "complaint" may be broadly interpreted to include counterclaims in some situations,[4] a statutory interpretation construing the language of section 38–1–11(4)(a) to include liens enforced by counterclaim is too expansive because such an interpretation runs counter to the purpose and context of the Mechanics' Lien Act, the plain language of section 38–1–11(4)(a), and the narrow scope of protection LRFA was intended to provide.

¶ 14 Next, we must determine whether section 38–1–11(4)(a) applies regardless of the remedies available to the property owner under LRFA. LRFA protects homeowners from having to pay twice for the same improvements. *Id.* §§ 38–11–107, 38–11–204(3)(b) (2001). It does so by providing that once the homeowner has paid the general contractor in full, the homeowner and the home are then free from claims and liens of subcontractors who also worked on the home. *See, e.g., id.* § 38–11–107(1) (providing owners relief only against parties with agreements "other than directly with the owner"); *id.* § 38–11–204(3)(b) (providing owners relief only after the owner "has paid in full the original contractor"); *id.* § 38–11–102(14) (defining "original contractor" as "a person who contracts with the owner of real property"). In such cases, LRFA instructions and the forms referenced in section 38–1–11(4)(a) allow the owner of a residence to dispose of the case quickly and easily, without having to incur the expenses of litigation.

¶ 15 Looking to the whole statutory framework of the Mechanics' Lien Act and the limited protections LRFA was intended to provide, we hold that where a lien claimant seeks to enforce a lien on a property owner with no rights available under LRFA, compliance with the notice requirements of section 38–1–11(4)(a) is not required. However, a lien claimant who chooses not to

---

at 193. However, the particular portion of the Mechanics' Lien Act at issue in that case provided " 'in *any action* brought to enforce *any* lien under this chapter....' " *Id.* (emphasis added)(quoting Utah Code Ann. § 38–1–18 (Supp. 1996)). It was not qualified in any manner, unlike the language at issue in the case before us today where "action" is qualified as a "complaint" served "on the owner of the residence."

4. "A counterclaim is viewed as an original action, instituted by the defendant against the plaintiff and is tested by the same tests and rules as a complaint." *Harman v. Yeager,* 103 Utah 208, 134 P.2d 695, 696–97 (1943) (concluding that an answer that did not set out a cause of action did not constitute a counterclaim).

comply with section 38–1–11(4)(a) does so at her own peril and risks losing her cause of action if mistaken as to the applicability of the requirements.

¶ 16 In this case, however, LRFA does not provide Sill with a remedy. Sill had not paid the original contractor, Hart, in full. Thus, Sill had no right or protection available under LRFA. Had he been served with the notices required by section 38–1–11(4)(a), they would have been useless to him as he had no "available rights" to "exercise" under LRFA. *Id.* § 38–1–11(4)(a)(i), (ii). Furthermore, as explained above, once he initiated legal action, his need for protection against an unwarranted mechanics' lien without incurring the costs of litigation evaporated. Hart therefore was under no obligation to comply with the notice requirements of section 38–1–11(4)(a).

¶ 17 We note that if an owner has rights available to her under LRFA, the situation will be different. If a lien claimant seeks to enforce a mechanics' lien on the owner of residential property even though the improvement has been paid for in full, she may "be barred from maintaining or enforcing the lien upon the residence." *Id.* § 38–1–11(4)(e) (2001). If the notice requirements in fact apply, a contractor would be providing the owner with an affirmative defense pursuant to section 38–1–11(4)(e).

¶ 18 We agree with the court of appeals' conclusion in its review of this case, *Sill v. Hart*, 2005 UT App 537, ¶ 14, 128 P.3d 1215, and in *Pearson v. Lamb*, 2005 UT App 383, ¶ 15, 121 P.3d 717, that section 38–1–11(4)(e) does not act as a jurisdictional bar, but rather provides owners with an affirmative defense. Section 38–1–11(4)(e) (2001) provides that "[i]f a lien claimant fails to provide to the owner of the residence the instructions and form affidavit required by Subsection (4)(a), the lien claimant shall be barred from maintaining or enforcing the lien upon the residence." In *Pearson*, the court of appeals held that "failure to adhere to section 38–1–11(4)(a) [does] not divest the trial court of jurisdiction." 2005 UT App 383, ¶ 15, 121 P.3d 717. Similarly, because failure to comply with section 38–1–11(4)(a)

raised a defense "'outside or extrinsic to'" Hart's prima facie mechanics' lien claim, the court of appeals recognized that it was an affirmative defense. *Sill*, 2005 UT App 537, ¶ 15, 128 P.3d 1215 (quoting *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 31, 56 P.3d 524).

¶ 19 In determining whether a statutory provision is jurisdictional, we begin with the presumption that "district courts retain their grant of constitutional jurisdiction in the absence of clearly expressed statutory intention to limit jurisdiction." *Labelle v. McKay Dee Hosp. Ctr.*, 2004 UT 15, ¶ 8, 89 P.3d 113. The notice requirements of section 38–1–11(4)(a) are merely directory in nature rather than mandatory and jurisdictional. A "designation is mandatory . . . if it is 'of the essence of the thing to be done.'" *Pearson*, 2005 UT App 383, ¶ 7, 121 P.3d 717 (quoting *Beaver County v. Utah State Tax Comm'n*, 919 P.2d 547, 552 (Utah 1996)). Hart's failure to include the instructions and forms "did not compromise the purpose of the [Mechanics' Lien] Act." *Pearson*, 2005 UT App 383, ¶ 8, 121 P.3d 717. Invalidating Hart's ability to be paid for his labor solely due to a procedural error that went unnoticed by Sill for more than two and a half years would "clearly contravene[ ] the intended purpose of the Mechanics' Lien Act." *Id.* ¶¶ 8, 14. Further, the notice requirements of section 38–1–11(4)(a) serve "a wholly informational role," are a "minor component" of the Mechanics' Lien Act, and are one of "numerous procedural hurdles to enforcing a lien." *Id.* ¶¶ 11, 12 (internal quotation marks omitted). Accordingly, the notice requirements concern only "the proper, orderly and prompt conduct of the business" and are therefore directory and not jurisdictional. *Id.* ¶ 12 (internal quotation marks omitted).

## CONCLUSION

¶ 20 In sum, we hold that section 38–1–11(4)(a) is not triggered when a lien claimant seeks to enforce a lien by filing a counterclaim rather than an initial complaint. Further, when a lien claimant seeks to enforce a lien upon a property owner with no rights available under LRFA, compliance with the notice requirements of section 38–1–11(4)(a)

is not required; however, the lien claimant bears the risk of providing an owner with an affirmative defense by disregarding the notice requirements in cases where they are applicable. We reverse the court of appeals and remand for further proceedings consistent with this opinion.

¶ 21 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.