*This opinion is subject to revision before publication in the Pacific Reporter*

**2015 UT 29**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

2 TON PLUMBING, L.L.C.,
*Appellee/Cross-Appellant,*

*v.*

GREGORY THORGAARD; KENDRA THORGAARD;
WASHINGTON FEDERAL, INC., dba
WASHINGTON FEDERAL SAVINGS, et al.
*Appellants/Cross-Appellees.*

No. 20120390
Filed January 30, 2015

Fourth District, Heber Dep't
The Honorable Derek P. Pullan
No. 090500368

Attorneys:

David R. Nielson, Tracy A. Wilder, Salt Lake City, for appellee

Ronald G. Russell, Royce B. Covington, Jeffery A. Balls,
Salt Lake City, for appellants

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE PARRISH,
JUSTICE LEE, and JUDGE KELLY joined.

Having recused herself, JUSTICE DURHAM does not
participate herein. DISTRICT JUDGE KEITH A. KELLY sat

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This case involves interpretation of various provisions of the 2009 Mechanics' Liens statute. Specifically, we are asked to consider (1) whether attorney fees and other costs may be included in the value of a mechanics' lien, (2) when a notice of

release of lien and substitution of alternate security is timely filed, and (3) whether the attorney fees award was reasonable.

## BACKGROUND

¶ 2 Appellee/cross-appellant, 2 Ton Plumbing, L.L.C. (2 Ton), contracted with BNB Development LLC, Performance Construction, Inc., and Performance Construction of Utah, LLC (collectively, Developers) to provide plumbing-related materials and labor to fourteen properties in the Hailstone at Stillwater development in Heber City, Utah. From June through September 2008, 2 Ton furnished improvements to Lot 30, one of the Hailstone properties, but was not paid for its work.

¶ 3 On January 30, 2009, 2 Ton recorded a notice of mechanics' lien (original notice of lien) against Lot 30 and eight other lots in the development. The notice stated that it secured $7,470.72 for "furnishing plumbing, materials and installation," "plus interest, costs and attorney fees." Subsequently, BNB Development (BNB), the owner of Lot 30 at the time the lien was recorded, conveyed the property to BBRP, LLC. BBRP in turn executed a trust deed for Lot 30 in favor of Zions Bancorporation (Zions).

¶ 4 On July 27, 2009, after filing its original notice of lien, 2 Ton filed a complaint seeking to enforce its mechanics' liens against Lot 30 and the other eight properties. The complaint named BBRP and Zions as defendants in the lien foreclosure action against Lot 30 and also included various other claims against the Developers, including breach of contract and joint venture liability. The following day, 2 Ton recorded a lis pendens, providing notice of the lien foreclosure action against the nine properties. BNB and Zions were served with a summons and complaint on August 3, 2009, and August 17, 2009, respectively.

¶ 5 The Developers timely filed a joint answer to the complaint, which BBRP joined. In the joint answer, BNB asserted a counterclaim against 2 Ton alleging that 2 Ton had been overpaid for its work in the Hailstone development. BBRP also independently asserted 2 Ton's overpayment as a defense to the lien foreclosure claim against Lot 30.

¶ 6 On October 14, 2009, Appellants Gregory and Kendra Thorgaard purchased Lot 30 from BBRP. To secure their purchase loan, the Thorgaards executed a trust deed in favor of Appellant

Washington Federal (Appellants, the Thorgaards and their lender Washington Federal, will be collectively referred to as "the Thorgaards").

¶ 7   2 Ton filed an amended complaint on November 20, 2009, which did not name the Thorgaards as defendants.  The same day, 2 Ton's counsel wrote to the Thorgaards advising them of the lien and warning them that there would be greater legal expense if further action was necessary.  The letter invited the Thorgaards to voluntarily satisfy the lien and indicated the amount owed.  The Thorgaards declined the invitation.

¶ 8   On April 30, 2010, 2 Ton filed a second amended complaint, for the first time naming the Thorgaards and Washington Federal as defendants in the lien foreclosure action. 2 Ton served the Thorgaards with the complaint on May 10, 2010 and Washington Federal on June 18, 2010.  Like their predecessor in interest, BBRP, the Thorgaards also contested the validity of the lien on the basis that 2 Ton had been overpaid for its work.

¶ 9   That summer, on August 5, 2010, 2 Ton recorded an amended notice of mechanics' lien against Lot 30 in the amount of $20,983.42.  The amended notice provided that "there is currently believed to be owed a total of $20,983.42 consisting of principal of $7,147.41, plus lien fees of $110, plus interest and late fees of $2,480.30, plus pro rata costs of $942.44, plus pro rata attorney fees of $10,323.27, which amount could change, should additional credits, charges, interest, costs and attorney fees be incurred."

¶ 10   On September 16, 2010, Washington Federal recorded its notice of release of lien and substitution of alternate security and made a cash deposit of $14,942.00.  This document purported to release 2 Ton's original January 30, 2009 notice of lien with its claim of $7,147.41.  Washington Federal did not address the amended notice of lien that 2 Ton had recorded the month before in the amount of $20,983.42.

¶ 11   On January 12, 2011, 2 Ton filed a third amended complaint which, among other things, sought to invalidate Washington Federal's lien release on the grounds that it attached insufficient alternate security. 2 Ton argued that the alternate security should have been 175 percent of the amount claimed in its amended notice of lien—$20,983.42.   2 Ton also asserted a

claim against the alternate security, as required by Utah Code section 38-1-28(4)(b) (2009).[1]

¶ 12  On January 28, 2011, the Thorgaards moved to dismiss two counts of 2 Ton's third amended complaint—the lien foreclosure claim, and the claim that the lien release and substitution of alternate security was invalid.  The Thorgaards contended that their lien release was valid because they properly submitted a cash deposit in the amount of 200 percent of 2 Ton's original lien claim and thus fully complied with the pertinent section of the Mechanics' Liens statute, Utah Code section 38-1-28. They argued that a mechanics' lien claim is limited to the "value of the services rendered, labor performed, or materials or equipment furnished or rented" and attorney fees and costs are not included in this amount.  The Thorgaards also argued that the amended notice of lien was invalid and "unenforceable" because it was untimely filed and "moreover . . . [could] not be used to trigger a requirement for more security than what is required under section 38-1-28."  After briefing and oral argument on the matter, the district court denied the Thorgaards' motion to dismiss.  The Thorgaards appeal in part from that denial.

¶ 13  Ten days after the hearing on the motion to dismiss, on June 13, 2011, 2 Ton recorded a second amended notice of mechanics' lien against Lot 30 in the amount of $38,714.98.  The second amended notice of lien alleged, again, that $7,147.41 of this amount was for improvements to the property while the remaining sum consisted of lien fees, interest, late fees, costs, and attorney fees.

¶ 14  As the litigation continued, the Thorgaards and Developers continued to dispute the validity of the lien on the basis that 2 Ton had been overpaid for its work.  Ultimately, on December 5, 2011, the Thorgaards stipulated to a finding of fact

---

[1] In 2012, the "Mechanics' Liens" section of the Utah Code was renumbered, amended, and partially repealed.  The amended statutory scheme can now be found at Utah Code sections 38-1a-101 to -804 (2014).  Because the 2009 version of the code was in effect "at the time of the event regulated by the law in question," we cite to that version throughout.  *State v. Folsom*, 2015 UT 14, ¶ 10, __P.3d__.

that the value of the services rendered, labor performed, or materials or equipment furnished or rented by 2 Ton that had not been paid on Lot 30 was $7,147.41.

¶ 15 Following the Thorgaards' stipulation, 2 Ton submitted affidavit testimony and exhibits to support its claim for attorney fees. 2 Ton alleged that it had incurred $37,019.53 in attorney fees and $1,543.56 in costs prosecuting its lien against Lot 30. The Thorgaards contested 2 Ton's claim for attorney fees on the basis that the amount was unreasonable, that attorney fees should be allocated to those defendants who caused 2 Ton to incur the majority of those fees, and that attorney fees should be awarded on a per capita basis against all fourteen lots in the development.

¶ 16 On March 19, 2012, the district court entered a ruling and order on the award of attorney fees, and on April 16, 2012, it entered a judgment against Lot 30 in the amount of $57,972.42. The judgment included $7,147.41 in principal, $1,287.50 in costs, $110 for a lien filing fee, $4,569.81 in interest, and $44,857.70 in attorney fees. The Thorgaards also appeal from this judgment.

## ISSUES AND STANDARDS OF REVIEW

¶ 17 The Thorgaards and Washington Federal raise three issues on appeal. First, they contend that the district court erred by ruling that attorney fees and costs are properly included in a mechanics' lien and therefore erroneously found their notice of release of lien and substitution of alternate security was invalid. A district court's interpretation of relevant statutory provisions is reviewed for correctness, giving "no deference to the district court's decision."[2]

¶ 18 Second, the Thorgaards argue that the district court erroneously held that 2 Ton's amended notices of lien were timely filed. Because we hold that the amended notices of lien were invalid, we do not address this issue.

¶ 19 Finally, the Thorgaards challenge the district court's award of $44,957.70 in attorney fees. A district court's calculation

---

[2] *Carter v. Univ. of Utah Med. Ctr.*, 2006 UT 78, ¶ 8, 150 P.3d 467; *see also Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 8, 219 P.3d 918.

of attorney fees will not be overturned absent a showing that the district court abused its discretion.[3]

¶ 20   2 Ton raises one issue on cross-appeal.  It argues that the district court erred by allowing Washington Federal to record its notice of release of lien and substitution of alternate security more than ninety days after the original owner of Lot 30 was served with a summons and complaint in the lien foreclosure action.  We review questions of statutory interpretation for correctness, granting no deference to the district court's decision.[4]

## ANALYSIS

¶ 21   "Mechanics' liens are statutory creatures unknown to the common law."[5]   The Utah Mechanics' Liens statute is to be "liberally construed" to effect its purpose, which is "to provide protection to those who enhance the value of a property by supplying labor or materials."[6]  Of course, "[w]hile it is true that our statutes are to be liberally construed to give effect to their purpose and to promote justice," we note that "it is equally true that they should not be distorted beyond the intent of the legislature."[7]  Most statutes, including this one, are the result of a legislative balancing of "competing policy considerations."[8]  Accordingly, we begin our analysis with the plain language of the statute.  In so doing, we read the plain language of the Mechanics' Lien Act "as a whole and interpret its provisions in harmony with

---

[3] *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62 ¶ 33, 52 P.3d 1179; *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988).

[4] *Carter*, 2006 UT 78, ¶ 8.

[5] *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986).

[6] *Id.*

[7] *Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1079 (Utah 1988) (internal quotation marks omitted).

[8] *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 14, 274 P.3d 981.

other provisions in the same statute."[9]  This is because a statute "is passed as a whole" and "[c]onsequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole."[10]  However, "where the statute fails, courts cannot create rights, and should not do so by unnatural and forced construction."[11]  "[A] lien created solely by statute depends on the terms of the statute . . . ."[12]  Because a mechanics' lien is a "statutory creature," we begin with a review of the relevant statutory provisions of the Mechanics' Liens statute.

¶ 22   In 2012, the "Mechanics' Liens" section of the Utah Code was renumbered, amended, and partially repealed.  The current statutory provisions now appear under the chapter name "Preconstruction and Construction liens," and can be found in the Utah Code at section 38-1a-101 through section 38-1a-804.  Of particular note, two sections central to this case, Utah Code sections 38-1-16 and 38-1-17 (2009), were repealed by the Utah Legislature in 2012.  This case involves the 2009 version of the Utah Code.  Because "we apply the law as it exists at the time of the event regulated by the law in question,"[13] we will refer to the 2009 version of the Mechanics' Liens statutes throughout.

¶ 23   Under section 38-1-3 of the Utah Code, a subcontractor "shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished

---

[9] *Sill v. Hart*, 2007 UT 45, ¶¶ 7, 13, 162 P.3d 1099 (internal quotation marks omitted) (interpreting the plain language of the Mechanics' Lien Act and holding that a possible interpretation failed in part because it was "counter to the purpose and context" of the Act).

[10] *Id.* ¶ 7 (internal quotation marks omitted).

[11] *Eccles Lumber Co. v. Martin*, 87 P. 713, 716 (Utah 1906).

[12] *AAA Fencing Co.*, 714 P.2d at 292.

[13] *State v. Folsom*, 2015 UT 14, ¶ 10, __ P.3d__ (internal quotation marks omitted).

or rented."[14] A lien "attach[es] as of the date of the commencement of the first work on the improvement or structure involved,"[15] but in order to perfect the lien, a lien claimant must follow the procedures dictated by the statute.[16]

¶ 24 Section 38-1-7 of the Utah Code provides that a lien claimant "shall file" a "written notice to hold and claim a lien."[17] Subsection 38-1-7(2)(a) specifies further that a lien claimant's notice of lien "shall" set forth, among other things, the "amount of the lien claim."[18] The lien claimant must file the completed notice of lien with the county recorder no later than "180 days after the day on which occurs final completion of the original contract."[19] And, "[w]ithin 30 days after filing the notice of lien, the lien claimant shall deliver or mail . . . a copy of the notice of lien to (i) the reputed owner of the real property; or (ii) the record owner of the real property."[20]

¶ 25 After filing the notice of lien, section 38-1-11 requires that the lien claimant record a lis pendens with the county recorder and "file an action to enforce the lien," both within 180 days from the day on which the lien notice was filed.[21] If that action is successful, "[t]he court shall cause the property to be sold in satisfaction of the liens and costs."[22] "Costs" include "the costs

---

[14] UTAH CODE § 38-1-3.

[15] *See Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982); UTAH CODE § 38-1-5.

[16] *AAA Fencing Co.*, 714 P.2d at 291 ("[C]ompliance with the statute is required before a party is entitled to the benefits created by the statute.").

[17] UTAH CODE § 38-1-7(1)(a)(i).

[18] *Id.* § 38-1-7(2)(a).

[19] *Id.* § 38-1-7(1)(a)(i)(A).

[20] *Id.* § 38-1-7(3)(a).

[21] *Id.* § 38-1-11(2), (3).

[22] *Id.* § 38-1-15 (The sale shall be conducted "as in the case of foreclosure of mortgages, subject to the same right of redemption.").

of preparing and recording the notice of claim of lien and such reasonable attorneys' fee as may be incurred in preparing and recording said notice of claim of lien."[23]  In terms of attorney fees, the statute specifically provides that the "successful party" in an action to enforce a mechanics' lien "shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action."[24]  The Act further provides that the court has the power to apportion costs between a contractor and an owner, "but in all cases each subcontractor exhibiting a lien shall have his costs awarded to him," including reasonable attorneys' fees.[25]

¶ 26  Utah Code section 38-1-28 sets forth procedures by which a party disputing a lien's validity may release the lien and clear the subject property's title.  The statute provides that "[t]he owner of any interest in real property that is subject to a mechanics' lien recorded under this chapter, . . . who disputes the correctness or validity of the lien may record a notice of release of lien and substitution of alternate security."[26]

¶ 27  The statute requires that the notice of release of lien be filed within "90 days after the day on which the person filing a notice of release of lien and substitution of alternate security is served with a summons and lien foreclosure complaint."[27]  Among other things, the notice must include "as an attachment a surety bond or evidence of a cash deposit" in an amount equal to

---

[23] *Id.* 38-1-17.

[24] *Id.* 38-1-18(1).  Additionally, under section 38-1-16, "[e]very person whose claim is not satisfied . . . may have judgment docketed for the balance unpaid, and execution therefor against the party personally liable." *Id.* § 38-1-16 (2009).

[25] *Id.* § 38-1-17; s*ee also Shupe v. Menlove,* 417 P.2d 246, 249 (Utah 1966) ("It is plain that [sections 38-1-17 and 38-1-18] should be construed together and that when attorney fees are awardable thereunder they are to be treated as costs which, as expressed in 38-1-17 the court 'shall apportion the costs according to the right of the case.'").

[26] *Id.* § 38-1-28(1).

[27] *Id.* § 38-1-28(1)(c).

either 150 percent, 175 percent, or 200 percent of the amount claimed by the lien claimant on his or her notice of lien.[28] The surety bond or evidence of a cash deposit must be "made payable to the lien claimant" and "conditioned for the payment of . . . the judgment that would have been rendered, or has been rendered against the property in the action to enforce the lien; and . . . any costs and attorneys' fees awarded by the court."[29] If the property owner disputes the amount claimed in the notice of lien, he may petition the court to hold a hearing to determine the correct amount of the lien claim "for the sole purpose of providing alternate security."[30]

¶ 28 Within thirty days of recording the notice of release of lien, the property owner must serve the lien claimant with a copy.[31] And within ninety days of receipt of the notice, the lien claimant must add the alternate security as a party to the lien foreclosure action if a suit is pending.[32] After meeting the statutory requirements set forth in subsections 38-1-28(1) and (2), "the real property described in the notice shall be released from the mechanics' lien to which the notice applies."[33]

¶ 29 In short, posting the alternate security causes the lien to no longer be secured by the original real estate, and instead the lien becomes secured by the bond or cash equivalent posted. The posting of alternate security does not eliminate the lien or alter the rights and obligations of the parties. Instead, the alternate security serves as *substitute* security for the lien and judgment on the action to enforce the lien.[34] After alternate security is

---

[28] *Id.* § 38-1-28(2)(c) (explaining that the percentage required to be posted depends on the amount of the lien claimed).

[29] *Id.* § 38-1-28(2)(c)(iii)–(iv).

[30] *Id.* § 38-1-28(7)(a).

[31] *Id.* § 38-1-28(4)(a).

[32] *Id.* § 38-1-28(4)(b).

[33] *Id.* § 38-1-28(1), (3)(a).

[34] *See Royster Constr. Co. v. Urban West Cmtys.*, 47 Cal. Rptr. 2d 684, 688 (Ct. App. 1995) ("The recording of the release bond does not extinguish the lien; rather, the bond is substituted for the land

(con't.)

substituted for the property, the lien foreclosure action proceeds against the alternate security and the party "disput[ing] the correctness or validity of the lien," but not the subject property.[35] Section 38-1-28 "does not otherwise affect the rights of interested parties" in the underlying action to enforce the lien.[36]

¶ 30   The procedures under Utah Code section 38-1-28 balance the rights of land owners with the rights of lien claimants.[37]   The statute provides lien claimants with a substitute source of security from which the claimant may ultimately recover.   At the same time, it furthers the public policy in favor of alienability of

---

as the object to which the lien attaches, with the lien transferred from the land to the bond."); *Am. Bank v. Wadsworth Golf Constr. Co. of the Sw.*, 307 P.3d 1212, 1218 (Idaho 2013) ("[T]he lien release bond is merely meant to act as substitute security for the real property and does not otherwise affect the rights of interested parties."); *Gil Ruehl Mech., Inc. v. Hartford Fire Ins. Co.*, 164 S.W.3d 512, 513–14 (Ky. Ct. App. 2004) (interpreting Kentucky's mechanics' lien release bond statute "as creating a bond that is a 'mere substitute for the lien property'"(citation omitted)).

[35] UTAH CODE § 38-1-28(1).

[36] *Am. Bank*, 307 P.3d at 1218.

[37] *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990) ("[W]e recognize that liens create an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit . . . . State legislatures and courts attempt to balance these competing interests through their mechanic's lien statutes and judicial interpretations thereof." (citations omitted) (internal quotation marks omitted)); *accord Hunzinger Constr. Co. v. SCS of Wis., Inc.*, 694 N.W.2d 487, 491 (Wis. Ct. App 2005) ("[T]he release bond procedure . . . provides a means by which, before a final determination of the lien claimant's rights and without prejudice to those rights, the property may be freed of the lien, so that it may be sold, developed or used as security for a loan.  The procedure thus protects both the property owner by allowing the bond to substitute for the land as the object to which the lien attaches and the claimant by providing an alternate source of recovery on the claim of lien.").

property[38] by allowing land owners to sell (or refinance) their property while a lien foreclosure action is ongoing. But a release of lien and substitution of alternate security under section 38-1-28 "does not otherwise affect the rights of interested parties" in the underlying action to enforce the lien.[39]

## I. THE VALIDITY OF 2 TON'S NOTICES OF MECHANICS' LIEN

¶ 31   Resolution of the claims before us requires interpretation of Utah's Mechanics' Liens statute. "It is well settled that when faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the Legislature."[40] "The best evidence of the legislature's intent is the plain language of the statute itself."[41] "[W]e presume that the legislature was deliberate in its choice of words and used each term advisedly and in accordance with its ordinary meaning. Where a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends."[42]

¶ 32   However, "our plain language analysis is not so limited that we only inquire into individual words and subsections in isolation; our interpretation of a statute requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole*."[43] When interpreting statutory text, we presume "that the expression of one [term]

---

[38] *Boyle v. Baggs*, 350 P.2d 622, 624-25 (Utah 1960).

[39] *Am. Bank*, 307 P.3d at 1218.

[40] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (internal quotation marks omitted).

[41] *State v. Miller*, 2008 UT 61, ¶ 18, 193 P.3d 92 (internal quotation marks omitted).

[42] *Torrie v. Weber Cnty.*, 2013 UT 48, ¶ 11, 309 P.3d 216 (alteration in original) (internal quotation marks omitted).

[43] *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (internal quotation marks omitted).

should be interpreted as the exclusion of another,"[44] and will not "infer substantive terms into the text that are not already there."[45] "[W]e assume, absent a contrary indication, that the legislature used each term advisedly . . . [and] seek to give effect to omissions in statutory language by presuming all omissions to be purposeful."[46]

## A. 2 Ton's Amended Notices of Lien Are Invalid Because Attorney Fees and Costs Should not Be Included in the Value of a Mechanics' Lien

¶ 33  2 Ton recorded three notices of lien, each for the same underlying claim, but the latter two amended the amount of 2 Ton's mechanics' lien claim to include attorney fees and costs up to the date of the amended notices. The Thorgaards argue that the Mechanics' Liens statute limits a mechanics' lien to the "value of the service rendered, labor performed, or materials or equipment furnished or rented."[47] They maintain the Utah Code does not allow a lien claimant to include attorney fees or costs incurred in prosecuting the lien claim in the "amount of the lien claim" set forth in the notice of lien.[48] We agree.

¶ 34  Any reference to "attorney fees" is notably absent from section 38-1-3's statutory language, which sets forth "what may be attached" in a lien claim, as well as from section 38-1-7, which states the information that "shall" be contained in the notice of lien. The legislature omitted attorney fees and costs from the value of a lien, and we presume this choice was purposeful.[49] Moreover, to stretch the language describing the value of a mechanics' lien in a way that includes attorney fees is inconsistent with our general rule that "[a]ttorney fees are awarded only when

---

[44] *Marion Energy*, 2011 UT 50, ¶ 14 (alteration in original) (internal quotation marks omitted).

[45] *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994).

[46] *Marion Energy*, 2011 UT 50, ¶ 14 (internal quotation marks omitted).

[47] UTAH CODE § 38-1-3 (2009).

[48] *Id.* § 38-1-7(2)(a)(vi).

[49] *See Marion Energy*, 2011 UT 50, ¶ 14.

authorized by statute or by contract."[50]   Had the legislature intended for attorney fees and costs to be included in the value of a mechanics' lien, it could have said so, particularly in light of "the Legislature's ability and willingness to single out attorney fees"[51] elsewhere in the Utah Code.

¶ 35   Viewed as a whole, the Mechanics' Liens statute shows that our legislature created a careful plan for awarding a lien claimant attorney fees.  Allowing attorney fees and other costs to be included in the original amount of a mechanics' lien would frustrate this plan.  Section 38-1-18 provides that if a lien claimant elects to enforce the mechanics' lien, "the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action."[52]   This provision clarifies that an award of attorney fees is a conditional award that depends upon the outcome of the action to enforce the lien.  Pursuant to section 38-1-18, a "successful party" must be ascertained before a lien claimant is entitled to claim attorney fees.

¶ 36   Furthermore, to allow a lien claimant to include attorney fees and costs in the lien claim would distort the provisions for the posting of alternate security.[53]   Section 38-1-18(1) makes clear that an award of attorney fees is conditioned on the successful prosecution of a lien enforcement action.  If attorney fees were included in the amount of the lien claim, then as litigation proceeded in the action to enforce the lien and more attorney fees were incurred, the amount of the lien would increase.  A party seeking to post alternate security would be chasing a moving target, because as the lien amount increased, the amount required for alternate security would correspondingly increase.

---

[50] *Jensen v. Sawyers*, 2005 UT 81, ¶ 127, 130 P.3d 325.

[51] *Tholen v. Sandy City*, 849 P.2d 592, 596 (Utah Ct. App. 1993).

[52] UTAH CODE § 38-1-18(1); *see also id.* § 38-1-17 ("[B]ut in all cases each subcontractor exhibiting a lien shall have his costs awarded to him, including the costs of preparing and recording the notice of claim of lien and such reasonable attorneys' fee as may be incurred in preparing and recording said notice of claim of lien.").

[53] *Id.* § 38-1-28.

¶ 37 2 Ton argues that attorney fees are part of a mechanics' lien against the property because attorney fees are costs, and costs—in addition to the amounts owed on the lien—are paid from the property sale proceeds. In essence, they contend that because the property secures both the lien and costs, attorney fees that accrue may be added to the lien against the property even before the lien foreclosure action has been resolved.[54]

¶ 38 2 Ton's position not only conflicts with the plain language of the statutory scheme, but it is inconsistent with the very nature of a lien. "In its broadest sense and common acceptation, the word 'lien' is understood and used to denote a legal claim or charge collectible out of property either real or personal, as security, for the payment of some debt or obligation."[55] Since a party has no obligation to pay attorney fees in a lien foreclosure action unless the action has concluded and that party has lost, such attorney fees cannot properly be included in the mechanics' lien claim amount. In *Park v. Jameson*, we held that attorney fees could constitute a lien on the property, but this was only *after* judgment on the action to enforce the lien had been awarded by the court in favor of the lien claimant.[56] It would not make sense to include attorney fees in the amount of the lien

---

[54] Utah Code section 38-1-16 reads, "Every person whose *claim* is not satisfied as herein provided may have judgment docketed for the balance unpaid, and execution therefor against the party personally liable." (emphasis added). Given the specificity with which the legislature describes how attorney fees are to be awarded in section 38-1-18, we do not read the legislature's passing reference to "claim" as permitting a lien claimant to include attorney fees and costs in his notice of lien. *See Madsen v. Brown*, 701 P.2d 1086, 1090 (Utah 1985) ("It is a long-standing rule of statutory construction that a provision treating a matter specifically prevails over an incidental reference made thereto in a provision treating another issue, not because one provision has more force than another, but because the legislative mind is presumed to have stated its intent when it focused on that particular issue.").

[55] *Olsen v. Kidman*, 235 P.2d 510, 511 (Utah 1951).

[56] 364 P.2d 1, 4 (Utah 1961); *see also* UTAH CODE § 38-1-18.

claim when those attorney fees can neither be ascertained nor awarded to the lien claimant until the conclusion of the lien enforcement action (and only if the lien claimant has prevailed).

¶ 39  Our conclusion that a mechanics' lien is limited to "the value of the service rendered, labor performed, or materials or equipment furnished or rented"[57] is supported both by a common understanding of the word "lien"[58] as well as language throughout the statute that indicates that the terms "lien" and "costs and attorney fees" are separate and distinct.[59]  For example, section 38-1-28(2)(c)(iv) provides that

> (2) A notice of release of lien and substitution of alternate security . . . shall . . . have as an attachment a surety bond or evidence of a cash deposit that . . . is conditioned for the payment of:
>
> (A) the judgment that would have been rendered, or has been rendered against the property in the action to enforce the *lien*; and
>
> (B) any *costs and attorneys' fees* awarded by the court . . . .[60]

---

[57] UTAH CODE § 38-1-3.

[58] *See, e.g., Olsen*, 235 P.2d at 511; BLACK'S LAW DICTIONARY 1006 (9th ed. 2009).

[59] *See* UTAH CODE § 38-1-7(3)(c) ("Failure to deliver or mail the notice of *lien* to the reputed owner or record owner precludes the lien claimant from an award of *costs and attorneys' fees* . . . ." (emphases added)); *id.* § 38-1-17 ("[I]n all cases each subcontractor exhibiting a *lien* shall have his *costs* awarded to him, including the costs of preparing and recording the notice of claim of lien and such *reasonable attorneys' fee* as may be incurred in preparing and recording said notice of claim of lien." (emphases added)); *id.* § 38-1-18(1) ("[I]n any action brought to enforce any *lien* under this chapter the successful party shall be entitled to recover a *reasonable attorneys' fee*, to be fixed by the court, which shall be taxed as *costs* in the action." (emphasis added)); *id.* § 38-1-28(2)(c)(iv).

[60] *Id.* § 38-1-28(2)(c)(iv) (emphases added).

¶ 40 In view of the legislature's separation of subsection (A) and (B) by the conjunctive "and," it follows that the terms "lien" and "costs and attorneys' fees" represent separate and distinct concepts. If a mechanics' lien could be amended to include costs and attorney fees, subsection (B) would be rendered superfluous.[61] Moreover, our own court of appeals has noted that "attorney fees should not be confused with the more generic term 'costs' because without specific statutory language, costs do not include attorney fees."[62]

¶ 41 Section 38-1-28 reinforces the tie between the lien enforcement action, the alternate security amount used to obtain the lien release, and attorney fees. When the owner of any interest in real property is subject to a mechanics' lien in an amount of less than $15,000 she must attach either a surety bond or evidence of a cash deposit that is 200 percent of the amount claimed by the lien claimant.[63] If the lien claimant prevails, the amount of security in excess of the lien claim may be used towards attorney fees. However, attorney fees will only be awarded to the lien claimant if the lien claimant (1) timely files an action to enforce the lien under section 38-1-11 and (2) prevails. A lien claimant cannot "put the cart before the horse" by amending his lien notice to increase the lien claim amount with attorney fees that have not yet been awarded.[64]

¶ 42 Finally, our conclusion that a mechanics' lien does not secure attorney fees and costs is supported by existing case law in

---

[61] *See State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265 (explaining that statutes "should be construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another" (alterations in original) (internal quotation marks omitted)).

[62] *Tholen*, 849 P.2d at 596.

[63] UTAH CODE § 38-1-28(2)(c)(ii)(C).

[64] This is especially so given that the statute requires that the alternate security contain a 50 to 100 percent buffer on top of the lien amount, presumably to cover some if not all of the costs and attorney fees. *Id.* § 38-1-28(2)(c)(ii).

other jurisdictions.[65]   Appellants' contend that the value of a mechanics' lien is limited to "the value of the service rendered, labor performed, or materials or equipment furnished or rented."[66] This is consistent with both the language of the statute as well as our decisions recognizing that mechanics' liens "protect original contractors, subcontractors, and others who enhance the value of real property through improvements."[67]   While "service rendered, labor performed, or materials or equipment furnished or rented" help improve and enhance the value of real property, attorney fees and costs do not.[68]

---

[65] *See Nat'l Lumber Co. v. United Cas. & Sur. Ins. Co.*, 802 N.E.2d 82, 86 (Mass. 2004) ("[O]ur inquiry is limited to whether a mechanic's lien recorded pursuant to [the mechanics' lien statute], includes contractual interest and reasonable attorney's fees in addition to the amount claimed for labor and materials. We conclude that it does not."); *Artsmith Dev. Grp., Inc. v. Updegraff*, 868 A.2d 495, 496 (Pa. Super. Ct. 2005) (explaining that the "statutory basis for a mechanics' lien expressly limits the lien to amounts owed for labor and materials only" and therefore, "interest [and] attorneys' fees . . . were not properly the subject of a mechanics' lien claim").

[66] UTAH CODE § 38-1-3.

[67] *Sill v. Hart*, 2007 UT 45, ¶ 12, 162 P.3d 1099; *see also A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 24, 94 P.3d 270 ("The purpose of the mechanic's lien is to protect those whose labor or materials have enhanced the value of property."); *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990) ("[T]he purpose of the mechanic's lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor." (internal quotation marks omitted)).

[68] *See All Clean, Inc. v. Timberline Props.*, 2011 UT App 370, ¶ 19, 264 P.3d 244 ("Because All Clean's flood mitigation work in Timberline's building was not an improvement of any building or structure or an improvement to any premises, so as to fall within the scope of the mechanics' lien statute, we affirm the trial court's decision that the statute did not apply here and that All Clean was

(con't.)

¶ 43 We conclude that the district court erred when it determined that the lien claim amount listed in a mechanics' lien notice may include attorney fees and costs. Because the amount of a mechanics' lien claim is limited to the value of the services, labor, and material that the lien claimant alleges he is owed, we hold that it is improper to add attorney fees and costs to that amount.[69] Accordingly, we hold that 2 Ton's amended notices of lien are invalid because they improperly included attorney fees and costs in the amount of the lien claim. 2 Ton's original notice of lien, however, was and is valid.

¶ 44 Because we hold that the amended notices of lien are invalid, we do not address the Thorgaards' alternative argument that the notice of lien was not timely amended.

### B. 2 Ton's Cross-Appeal

¶ 45 2 Ton argues that the district court erred by allowing the Thorgaards to record their notice of release of lien and substitution of alternate security more than ninety days after service was accomplished on the property's original owner in violation of Utah Code section 38-1-28(1)(c). In other words, 2 Ton asks us to hold that a property owner cannot release a lien and post alternate security if he or she is served with the summons and complaint midway through a lien foreclosure action. Because section 38-1-28(1) unambiguously allows "[t]he owner of any interest in real property that is subject to a mechanics' lien" to file a notice of release of lien within ninety days after *that person* is served, we affirm the district court's ruling that the notice of release of lien was timely.[70]

---

therefore not entitled to the benefit of the statute's attorney fees provision." (citation omitted) (internal quotation marks omitted)); *Daniels v. Deseret Fed. Sav. & Loan Ass'n*, 771 P.2d 1100, 1103 (Utah Ct. App. 1989) ("The profits a person is entitled to as the result of an investment do not constitute improvements to the realty nor do they fall within the statutory meaning of services or materials as contemplated in the mechanic's lien law statutes.").

[69] *See* UTAH CODE § 38-1-3.

[70] 2 Ton argues that section 38-1-28(1)(c) should be construed to require a release to be recorded within ninety days of the date service was completed on "the original owner(s), and not from the

(con't.)

¶ 46   Utah Code section 38-1-28(1)(c) allows owners of real property to release a lien from that property by posting alternate security "before the expiration of 90 days after the day on which the person filing a notice of release of lien . . . is served with a summons and lien foreclosure complaint."[71]   Under the statute, the alternate security that replaces the lien must be 150 percent of the amount claimed in notice of lien if the claim is for $25,000 or more, 175 percent if the lien claim is between $15,000 and $25,000, and 200 percent if the lien is less than $15,000.[72]   If the lien claimant is successful, the 50 to 100 percent surplus in excess of the lien claim amount may be used to pay the lien claimant's attorney fees and costs.  On that basis, 2 Ton argues that the intent of the ninety day provision "is to require the lien to be released [by the original owner] at the beginning of the lawsuit, before significant fees are incurred."   2 Ton contends that a successful

---

date of service on any subsequent owner(s)."   In support of this argument, 2 Ton argues that subsequent owners cannot "acquire[] greater rights in the property than their predecessor."   This interpretation is not supported by the plain language of the statute which states simply that an owner of any interest may file a notice of release within ninety days after "*the person* filing a notice of release of lien . . . is served."   UTAH CODE § 38-1-28(1)(c) (emphasis added).  When interpreting a statute, "we assume that each term in the statute was used advisedly; thus the statutory words are read literally."   *Sill*, 2007 UT 45, ¶ 11 (internal quotation marks omitted).  The plain meaning of "the person filing" indicates that the owner who is filing the release has the right to file it within ninety days after he or she is served.  Because the statute refers very generally to "the person filing" we cannot read into this language a limitation that "the person" refers only to the original owner.

[71] As noted, the statute has since been renumbered and amended.  The new statutory language requires owners to release the lien and post alternate security "at any time before the date that is 90 days *after the first summons is served* in an action to foreclose the preconstruction or construction lien for which the notice under this section is submitted for recording." UTAH CODE § 38-1a-804(1)(c) (2014) (emphasis added).

[72] *Id.* § 38-1-28(2)(c)(ii).

lien claimant may be deprived of his right to fully recover his legal expenses if the transfer of property to a new owner resets the ninety day period.

¶ 47   We disagree with 2 Ton's interpretation of the statute. The amount of alternate security does not affect the court's ability to "apportion the costs according to the right of the case," which includes awarding the successful party "a reasonable attorneys' fee."[73]   Section 38-1-28(1)(c) is unambiguous—"[t]he *owner of any interest* in real property" may record a notice of release of lien at any time "before the expiration of 90 days after the day on *which the person filing a notice of release*" is served with a summons and complaint.[74]   When faced with a question of statutory interpretation, our general rule is that we will "give effect to omissions in statutory language" by presuming them to be purposeful.[75]   Utah Code section 38-1-28(1) was written to allow "the owner of any interest in real property" to record a notice of release of lien and substitution of alternate security within "90 days after the day on which the person filing . . . is served with a summons and lien foreclosure complaint."   It does not include any language limiting the class of persons entitled to file such a release only to original owners, nor does it contain language exempting later purchasers from its provisions.

¶ 48   2 Ton argues that allowing subsequent owners to post alternate security under 38-1-28(1) creates a "loophole" in the statute that allows owners and their successors in interest to "beat down a lien claimant who had to incur significant legal expense to prove his claim."   On that basis, 2 Ton encourages us to hold that a release may be recorded and alternate security substituted only within ninety days of the date of service on the original owner. However, such a restrictive reading is inconsistent with the statute's plain language, which requires, unequivocally, that the release be recorded within ninety days of the date service was accomplished on "the person filing a notice of release" who owns "any interest" in the property.[76]   Moreover, 2 Ton's concern about

---

[73] *Id.* §§ 38-1-17, 38-1-18(1).

[74] *Id.* § 38-1-28(1)(c) (emphasis added).

[75] *Marion Energy*, 2011 UT 50, ¶ 14.

[76] UTAH CODE § 38-1-28(1).

a loophole is unfounded. The notice of release of lien and substitution of alternate security transforms the action into an action against both the alternate security and the owner "who disputes the correctness or validity of the lien."[77] And the court has full discretion under section 38-1-18 to award the successful party "a reasonable attorneys' fee."[78]

¶ 49 Here, the Thorgaards were subsequent owners of Lot 30—they purchased the property from BBRP and Washington Federal replaced Zions as the lender. Washington Federal was served with a summons and lien foreclosure complaint on June 18, 2010. "[B]efore the expiration of 90 days after" being served, Washington Federal made a cash deposit of $14,942 as alternate security and at the same time recorded its notice of release of lien as required by Utah Code section 38-1-28. Under the plain language of the statute, the district court was correct in determining that Washington Federal timely recorded its lien release.

¶ 50 In sum, we conclude that 2 Ton's amended and second amended notices of lien are invalid because 2 Ton improperly amended them to include attorney fees and costs. However 2 Ton's original notice of lien was and remains valid, as not only was it properly filed, but the parties stipulated to its validity and accuracy. The district court was correct when it held that the Thorgaards' notice of release of lien and substitution of alternate security was timely. But because the Thorgaards timely filed their notice of release of lien and because they submitted the proper amount of alternate security under section 38-1-28, the district court accordingly should have released the real property from the lien.

---

[77] *Id.*

[78] *See also id.* § 38-1-28(7)(k) (explicitly contemplating an award of attorney fees in an action against the alternate security and stating that they "shall be considered . . . under any other provision of this chapter").

## II. DUE TO ITS ERROR, THE DISTRICT COURT MUST RECALCULATE THE ATTORNEY FEE AWARD

¶ 51   The Thorgaards ultimately stipulated that the amount of the lien claim stated in 2 Ton's original notice of lien—$7,147.41—was correct. On December 27, 2011, the district court entered a judgment against the defendants in the lien foreclosure action, which included the Thorgaards and Washington Federal. Because 2 Ton was the successful party in the lien action, it was entitled to have its costs awarded, including reasonable attorney fees.[79] On April 16, 2012, the district court awarded 2 Ton $44,857.70 in attorney fees.

¶ 52   The Thorgaards argue that the district court abused its discretion when it awarded 2 Ton $44,857.70 in attorney fees. Specifically, they argue (1) that the district court improperly failed to allocate the attorney fees, first, between the contract and lien claims and, second, among the defendants who incurred the attorney fees; (2) that the court should have allocated attorney fees on a per capita basis to all fourteen lots; and (3) that an award of attorney fees that is more than six times the principal lien amount is per se unreasonable.

¶ 53   "Calculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion."[80] Though "an award of attorney fees must be supported by evidence in the record," "trial courts enjoy broad discretion in evaluating evidence to determine what constitutes a reasonable fee."[81] In this case, the district court abused its discretion by awarding attorney fees on the basis of an invalid notice of lien. Therefore, we must remand for the district court to recalculate the award after considering the fees incurred by the Thorgaards, who had to defend themselves against 2 Ton's improperly amended notices of lien, and whose property was not properly released under Utah Code section 38-1-28. In other words, because the improperly

---

[79] UTAH CODE § 38-1-18(1).

[80] *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (citation omitted).

[81] *Id.* at 988–89.

amended notices of lien were an error that permeated almost the entire course of the litigation, we remand for the district court to recalculate the reasonable attorney fees owed 2 Ton.

¶ 54  Mechanics' liens are wholly creatures of statute, having no place at common law.  In this setting, the only access to an attorney fees award is that granted by that statute.  Attorney fees first appear in section 38-1-17 of the Mechanics' Lien Act.  In this section, the court is instructed to apportion costs

> between the owner and the contractor . . . according to the right of the case, but in all cases each subcontractor exhibiting a lien shall have his costs awarded to him, including . . . such reasonable attorneys' fees as may be incurred in preparing and recording said notice of claim of lien.[82]

Under Utah Code section 38-1-18, attorney fees must be awarded to the successful party in the action to enforce a lien:  "in any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action."  As the successful party in the lien foreclosure action, 2 Ton was entitled to have the court award its costs, including reasonable attorney fees.

¶ 55  However, because 2 Ton improperly amended its notice of lien to reflect an improper calculation, and because the court erroneously accepted the amendments and refused to accept the alternate security and release the property, we hold that the attorney fee award must be reversed.  Accordingly, we remand for the district court to recalculate 2 Ton's reasonable attorney fees, and to consider and discount the attorney fees incurred by the Thorgaards as a result of the error.  Because we reverse the award of attorney fees, we need not address the Thorgaards' specific grounds for challenging the award.

## CONCLUSION

¶ 1  We conclude that the district court erred when it permitted 2 Ton to include attorney fees and costs in the amount of its lien claim.  Thus, 2 Ton's amended and second amended

---

[82] UTAH CODE § 38-1-17.

notices of lien were invalid. But 2 Ton's original notice of lien was valid. The Thorgaards' notice of release of lien and substitution of alternate security was timely recorded and properly referenced 2 Ton's original notice of lien. Because the Thorgaards complied with all statutory requirements, the district court erred in refusing to release Lot 30 from the lien. Yet because the Thorgaards stipulated to the accuracy of the original lien claim, 2 Ton, as the prevailing party, was entitled to recover its costs and a reasonable attorney fee award. We hold that the district court must recalculate that award after considering the effect of the errors on the fees incurred by both parties.

_____