**Cecilia REDICAN and Tamra Wright, Appellants,**

**v.**

**K MART CORPORATION, Respondent.**

**No. WD 41826.**

Missouri Court of Appeals, Western District.

Jan. 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied April 17, 1990.

Edward J. Houlehan, Houlehan and Waterman, Kansas City, for appellants.

Barry E. Warren, Norman I. Reichel, Wallace, Saunders, Austin, Brown and Enochs, Kansas City, for respondent.

Before BERREY, P.J., and TURNAGE, and ULRICH, JJ.

TURNAGE, Judge.

This is the second appeal in this case. The first appeal was *Redican v. K Mart Corp.*, 734 S.W.2d 864 (Mo.App.1987). In that case this court affirmed the judgment in favor of Redican and Wright for false imprisonment and affirmed the grant of a new trial in favor of both, upon the issue of malicious prosecution. While the court had granted a new trial as to damages only on the malicious prosecution claim, this court held that the new trial on malicious prosecution should be on both the question of liability and of damages.

On the re-trial of the malicious prosecution claim the jury awarded damages to Redican and to Wright of $50,000 actual and $30,000 punitive each. The court sustained K Mart's motion for judgment notwithstanding the verdict on the ground that the evidence failed to establish the element of a lack of probable cause for the prosecution. Redican and Wright appeal and contend the evidence did show that element. Reversed and remanded.

The evidence in this trial is virtually identical to the evidence as set out in Redican I. The evidence presented by Wright and Redican in this trial showed that they were employed at a K Mart store in Kansas City on March 30, 1984. Wright wanted to buy some cigarettes and a bag of diapers.

Wright picked up these items in the store, walked openly with the items in her arms to the front of the store, and placed them behind a cash register because all the registers had long lines of customers. Wright told Linda Phillips, the head cashier, that she had placed her merchandise behind the register and was going to pay for it when the lines were down. Phillips told Wright that was acceptable.

Wright also told Redican, who was operating a cash register, that she had some items which she was going to purchase and would complete the sale when the lines went down.

When Wright saw the line at Redican's register disappear, she picked up her merchandise and took it to Redican's counter. Redican was a relatively new cashier and testified she was having her first busy night.

Wright placed her items on Redican's counter and told Linda Phillips that she was ready to complete the sale. Phillips told her to proceed with the sale and that she would be down with the pink slip, which was a slip required for all employee purchases.

As Redican began ringing up the purchase, Phillips arrived to supervise the sale. Phillips stood behind Redican to observe the ringing up of the merchandise. Wright testified that she did not put any of the items in a sack prior to the time Phillips arrived. Phillips filled out the pink slip and the sale was completed.

The evidence of K Mart was that Kenneth Ostertag, the assistant manager, had observed Wright place the cigarettes and diapers behind the cash register and had asked J.R. Van Meter, another K Mart employee, to go to the observation area overlooking the cash registers to observe Wright. Van Meter stated that he used a pair of binoculars to observe Redican ringing up the sale so that he could read the figures on the cash register slip. Van Meter testified that he did not recall seeing any supervisor observing the transaction prior to the time that Wright had placed the cigarettes in a sack. In short, the conflict in the evidence centered on whether Wright had placed any cigarettes in a sack prior to the arrival of Phillips so that Phillips observed the entire transaction or whether Wright had sacked the cigarettes without Phillips being able to see how many cartons were involved.

Van Meter reported to Ostertag that Wright had placed five cartons of cigarettes in the sack, but that only three cartons had been charged to her. Ostertag had Wright and Redican called to an office where they were questioned. The evidence was that an off-duty police officer was working in the store on that day and that Glen Conners, the loss prevention manager, told the officer that he wanted Wright and Redican to go to jail and he wanted the other employees to see them going. The officer testified that he had called the investigating unit of the police department and told them of the incident. He was advised that the women did not need to be arrested and there should be further investigation. The officer told Conners of this but Conners insisted that the officer fill out a general ordinance violation summons for Wright and Redican and Conners signed the complaint portion of the summons. Wright and Redican were charged with stealing five cartons of Cigarettes and one bag of diapers, even though it was conceded the only items which were not paid for were the two cartons of cigarettes.

Wright and Redican were taken through the store and placed in a paddywagon and taken to a police station where they later made bond. They were both charged in municipal court and both appeared on the day set for hearing. No one from K Mart appeared and the charges were dismissed.

In Redican I K Mart contended that Wright and Redican failed to establish a case of malicious prosecution because their evidence failed to show lack of probable cause for the prosecution. *Id.* at 869[6]. This court held that it had discussed the probable cause element in connection with the false imprisonment claim and had held that when "there was conflicting evidence on the key question of whether Wright and Redican sought and obtained supervision over the sales transaction or whether they

avoided such supervision until the merchandise was sacked up and out of sight" made a submissible case on malicious prosecution. This court stated "this conflicting evidence on a crucial point created a question of fact, which the jury resolved in favor of Wright and Redican." *Id.* at 870. Thus, in Redican I this court held that Wright and Redican had made a submissible case on their claim for malicious prosecution.

In this trial the conflicting evidence on the key question of whether or not there was supervision over the transaction before the cigarettes were sacked and out of sight was the same as at the first trial.

In *State ex rel. Mercantile National Bank at Dallas v. Rooney*, 402 S.W.2d 354, 361[6] (Mo. banc 1966), the court stated:

> Generally, the law as applied to the facts in the opinion of the appellate court constitutes the law of the case on retrial and subsequent appeals unless there is a substantial change in the issues or evidence.

As noted, the evidence was the same at both trials. In that situation the law of the case was established in Redican I that Wright and Redican had made a submissible case on malicious prosecution. In *Green v. Stanfill*, 641 S.W.2d 490, 492[4] (Mo.App.1982), the court stated:

> A ruling that the evidence was sufficient to make a submissible case comes within the doctrine of the law of the case when the evidence is substantially the same on both appeals.

Thus, under the law of the case, as established in Redican I, the evidence was sufficient to prove a lack of probable cause for the initiation of the prosecution by K Mart.

The trial court was apparently of the view that Wright and Redican's admission that two cartons of cigarettes were not rung up showed probable cause for the prosecution. However, under the law of the case, the question of whether or not K Mart had probable cause or whether Redican and Wright proved a lack of probable cause for the prosecution was not open. That had been determined on the first appeal.

It follows that since the evidence of this case was the same as in Redican I that under the law of the case the evidence was sufficient to prove a submissible case on malicious prosecution. The court was in error in granting judgment n.o.v.

The judgment is reversed and this cause is remanded with directions to enter judgment on the verdict returned on January 25, 1989. The judgment entered pursuant to this remand shall be effective from January 25, 1989, and shall bear interest from that date. *Reimers v. Frank B. Connet Lumber Company*, 273 S.W.2d 348, 349[1, 2] (Mo.1954).

All concur.