**2021 UT App 101**

## THE UTAH COURT OF APPEALS

JASON T. STEVENSON,
Petitioner,
*v.*
LABOR COMMISSION, PSC LLC, ACE AMERICAN INSURANCE,
AMERICAN NUTRITION, AND PHOENIX INSURANCE/TRAVELERS
Respondents.

Opinion
No. 20200266-CA
Filed September 30, 2021

Original Proceeding in this Court

Rex C. Bush, Virginius Dabney, and Stony Olsen,
Attorneys for Petitioner

Mark R. Sumsion and Lori L. Hansen, Attorneys for
Respondent American Nutrition and Phoenix
Insurance/Travelers

Christin Bechmann, Mark R. Sumsion and Jeffrey A.
Callister, Attorneys for Respondent PSC LLC and
Ace American Insurance

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

HAGEN, Judge:

¶1      Jason T. Stevenson brought a claim against two of his
former employers for workers' compensation benefits related to
his chronic lung disease, which he alleges resulted from his
exposure to toxic fumes at work. An administrative law judge
(the ALJ) dismissed the claim as untimely, and the Utah Labor
Commission affirmed that decision. Because we find that the
Commission correctly interpreted the operative statute, and that

its timeliness findings were supported by substantial evidence, we decline to disturb the Commission's decision.

## BACKGROUND

¶2     Stevenson worked for respondent American Nutrition from approximately 2009 to 2012 and for respondent PSC LLC for a few months in 2012 (collectively, Employers). While working for Employers, he was exposed to acidic cleaning agents.

¶3     Over the years, Stevenson experienced worsening lung-related issues. In 2015, he was seen by several physicians who diagnosed him with various lung conditions. In March 2016, he began receiving social security disability benefits based on a diagnosis of pulmonary fibrosis.

¶4     In early June 2016, Stevenson visited Dr. Hallenborg, a pulmonologist. Dr. Hallenborg drew a causal connection between Stevenson's lung condition and his occupational exposure to toxic fumes. In notes dated June 5, 2016, Dr. Hallenborg recounted the following history:

> The patient was exposed at work at [PSC] to apparent acid cleaning. The patient was cleaning an area with acid and had inadequate respiratory protection and some shortness of breath, but persistent for over a year. . . .[W]orking for . . . American Nutrition cleaning after the manufacture of dog food, [he] was also exposed to acid wash.

Dr. Hallenborg recorded his impressions of Stevenson's condition as "toxic fume inhalation with devastating damage to his respiratory reserve, with pulmonary function abnormality and CAT scan changes of bilateral fibrosis." After conducting a bronchoscopy two days later, Dr. Hallenborg concluded,

> The patient is a 40-year-old gentleman who after working with acid wash in 2 different places of employment developed hypoxemia and acute shortness of breath. He was found to have severe scarring of both lungs, bilateral emphysema, [and] ground-glass appearance of lungs . . . .

In his testimony, Stevenson confirmed that Dr. Hallenborg had told him, "Your lung issue is due to toxic acid." Stevenson's wife testified that Dr. Hallenborg suggested, "If I were you, I would get an attorney."

¶5 Stevenson ultimately retained counsel in January 2017. At that time, counsel sent notice to Employers stating that Stevenson "has an occupational disease which he believes was caused by chemicals he was exposed to while working for your company." *See* Utah Code Ann. § 34A-3-108(2)(a) (LexisNexis 2019) (stating that an employee must notify the employer, "within 180 days after the cause of action arises" that the employee intends to make a claim for "benefits arising from [an] occupational disease").

¶6 On March 21, 2017, Dr. Hallenborg completed a summary of medical record form for "Occupational Exposure." The form stated Dr. Hallenborg's diagnosis as "toxic fume inhalation causing acute and chronic interstitial lung disease." Dr. Hallenborg opined that Stevenson was 100% disabled and that occupational exposure had caused his medical condition.

¶7 Thereafter, Stevenson filed a claim with the Commission under Utah's Occupational Disease Act (the Act), alleging that his interstitial lung disease was caused by his work for Employers. After an evidentiary hearing, the ALJ dismissed the claim as untimely because Stevenson had failed to notify Employers, as required by the Act, within 180 days after his cause of action arose. To calculate the date on which the cause of action arose, the ALJ was required to determine when Stevenson

knew, or in the exercise of reasonable diligence should have known, that he had a disabling occupational disease caused by his employment. *See id.* § 34A-3-108(2)(b). The ALJ determined that the cause of action arose when Stevenson "was told by Dr. Hallenborg on June 5, 2016, that his lung condition was caused by his work exposure." The ALJ explained:

> Although there are medical records . . . showing that Petitioner at least contemplated the connection between his condition and work [earlier,] . . . [g]iven the lack of positive diagnosis, . . . the Court finds that the connection was only speculative and that Petitioner did not know nor should he reasonably have known that his occupational disease was caused by his employment until the diagnosis of Dr. Hallenborg on June 5, 2016.

Because Stevenson first notified his employers in January 2017, more than 180 days later, the ALJ concluded that the Act barred his claim.

¶8 The ALJ also rejected a number of motions Stevenson filed following the evidentiary hearing. Relevant to this appeal, Stevenson had moved for sanctions under rule 37 of the Utah Rules of Civil Procedure, claiming that Employers had failed to maintain required employee exposure records. The ALJ denied that motion because, among other things, Stevenson had not shown how the alleged spoliation of evidence had prejudiced his claim.

¶9 The Commission affirmed the ALJ's order dismissing Stevenson's claim because Stevenson "failed to provide notice of his occupational disease to [Employers] within 180 days of when he knew or should have known that such disease arose out of and in the course of his employment." In particular, the Commission agreed with the ALJ's "decision to give Mr. Stevenson the benefit of the doubt and find that he knew or

reasonably should have known about the potential causal connection between his respiratory condition and the occupational exposure as of June 5, 2016, when Dr. Hallenborg described it." However, the Commission declined to reach the issue of sanctions, finding that the threshold issue of timeliness was dispositive.

¶10   Stevenson moved for reconsideration, arguing that "he did not suffer from the specific occupational disease for which he claims benefits until Dr. Hallenborg diagnosed him with chronic interstitial lung disease in March 2017." The Commission rejected this argument, noting that "it is clear from the record that he was suffering disability from his respiratory condition prior to March 2017 or else he would not have notified [Employers] of an occupational disease in his January 2017 letter." Moreover, the Commission explained that "the statutory phrase 'knows, or in the exercise of reasonable diligence should have known' does not connote a definitive finding regarding causation, nor does it require a specific diagnosis." Because Stevenson "knew his respiratory condition was potentially caused by his occupational exposure with [Employers] prior to Dr. Hallenborg's more refined diagnosis of chronic interstitial lung disease," the Commission denied Stevenson's request for reconsideration.

ISSUES AND STANDARDS OF REVIEW

¶11   Stevenson now seeks judicial review and presents two issues for our consideration. First, Stevenson contends that the Commission erred in affirming the ALJ's order dismissing his claim for failure to timely notify Employers of the occupational disease. "The Labor Commission's interpretation of a statute is a question of law, which we review for correctness." *Massengale v. Labor Comm'n*, 2020 UT App 44, ¶ 4, 462 P.3d 417 (cleaned up). But subsidiary factual determinations—here, when Stevenson knew or should have known that he was disabled from an

occupational disease caused by his employment—are questions of fact. *See Ockey v. Lehmer*, 2008 UT 37, ¶ 34, 189 P.3d 51. When the Commission's action is based on a determination of fact, we may grant relief only if the facts are "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2019). "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242 (cleaned up).

¶12 Stevenson also contends the Commission erred in declining to reach the issue of sanctions. But because we decline to disturb the Commission's decision dismissing Stevenson's claim for occupational disease benefits, we have no occasion to consider Stevenson's argument that he would have been entitled to sanctions for spoliation of evidence if his claim had been adjudicated.[1]

---

1. During oral argument before this court, Stevenson's counsel suggested that, if the Commission had granted the proposed sanction of striking Employers' answers and entering a default judgment, Employers would have been unable to raise the notice issue as an affirmative defense. But that assumes that striking Employers' answers would have been an appropriate sanction for the spoliation alleged in this case. Stevenson's claim regarding the alleged spoliation of evidence has nothing to do with when the 180-day notice period began to run; he does not suggest, for instance, that Employers' alleged failure to maintain exposure records prevented him from learning that his disability was caused by his employment. Under these circumstances, there would be no basis for precluding Employers from raising the timeliness issue.

ANALYSIS

¶13   Under the Act, employees who have sustained "an occupational disease, as defined in this chapter, arising out of and in the course of employment" must "promptly" notify their employer. Utah Code Ann. § 34A-3-108(1) (LexisNexis 2021).[2] And according to our legislature, in this context "promptly" means within 180 days: "An employee who fails to notify the employee's employer or the division within 180 days after the cause of action arises is barred from a claim of benefits arising from the occupational disease." *Id.* § 34A-3-108(2)(a). For purposes of this statutory provision, a cause of action arises when "the employee first: (i) suffers disability from the occupational disease; and (ii) knows, or in the exercise of reasonable diligence should have known, that the occupational disease is caused by employment." *Id.* § 34A-3-108(2)(b). The Commission found that both criteria were satisfied no later than June 5, 2016, when Dr. Hallenborg opined that Stevenson's lung condition was due to occupational exposure to toxic fumes while working for Employers.

¶14   Stevenson challenges this finding by arguing that Dr. Hallenborg did not diagnose him with "interstitial lung disease"—or any other specific disease—until March 2017 when the doctor completed the "Occupational Exposure" form. He argues that the employee must know that he is suffering disability "from a named disease" and that "[n]otice of a lung condition alone is insufficient to require that notice of an occupational disease be given."

¶15 Stevenson's argument overlooks the fact that "occupational disease" is a defined term within the Act. And the

_____

2. We quote the current version of this subsection for convenience, as no material amendments to the statute have been made since the events giving rise to this case.

statutory definition is incompatible with Stevenson's contention that "occupational disease" is limited to a particular type of diagnosis. The Act defines a compensable occupational disease as "any disease or illness that arises out of and in the course of employment and is medically caused or aggravated by that employment." *Id.* § 34A-3-103. By defining "occupational disease" to include "any disease or illness," the Act does not limit coverage to those employees who have received a definitive diagnosis identifying "a named disease."

¶16    Here, the conditions identified in Dr. Hallenborg's June 5 report—and tied to Stevenson's occupational exposure—meet the definition of "occupational disease" as defined in the Act. Dr. Hallenborg described Stevenson's condition as "toxic fume inhalation with devastating damage to his respiratory reserve, with pulmonary function abnormality and CAT scan changes of bilateral fibrosis." These conditions fall comfortably within the broad category of "any disease or illness."

¶17    Moreover, even if we were to accept Stevenson's cramped interpretation, Dr. Hallenborg's March 2017 diagnosis of "interstitial lung disease" did not mark the first time Stevenson was diagnosed with "a named disease." Other physicians had previously diagnosed Stevenson with chronic lung diseases, including pulmonary fibrosis, which is a type of interstitial lung disease.[3] Stevenson knew that he suffered a disability from that disease prior to his June 5, 2016 visit with Dr. Hallenborg—even if he did not know until June 5 that the disease was

---

3. "Interstitial lung disease refers to a group of about 100 chronic lung disorders characterized by inflammation and scarring that make it hard for the lungs to get enough oxygen. The scarring is called pulmonary fibrosis." *Interstitial Lung Disease: Pulmonary Fibrosis*, - JOHNS HOPKINS MEDICINE, https://www.hopkinsm edicine.org/health/conditions-and-diseases/interstitial-lung-dise ase-pulmonary-fibrosis# [https://perma.cc/MF63-GH5M].

occupational—because he had "been receiving Social Security Disability since March 2016 based on [his] diagnosis of pulmonary fibrosis." In addition, Stevenson notified Employers in January 2017 that he had "an occupational disease which he believes was caused by chemicals he was exposed to while working for your company." Given these facts, Stevenson cannot credibly argue he lacked knowledge that he suffered from an "occupational disease" until March 2017.

¶18   Sufficient evidence supports the Commission's finding that the 180-day notice period began to run no later than June 5, 2016—the date on which Dr. Hallenborg drew the connection between Stevenson's disabling lung disease and his employment. On that date, Dr. Hallenborg opined that Stevenson's condition had been caused by exposure to toxic fumes while working for Employers. In his notes, Dr. Hallenborg identified both workplaces and recounted that Stevenson had been exposed to acid wash at both jobs. Dr. Hallenborg concluded that Stevenson's condition was due to "toxic fume inhalation." Two days later, after conducting a bronchoscopy, Dr. Hallenborg again opined that Stevenson had developed the lung conditions "after working with acid wash in 2 different places of employment." And Dr. Hallenborg specifically told Stevenson, "Your lung issue is due to toxic acid." At that point, Stevenson knew, or should have known, that he had "any disease or illness" that arose out of and was medically caused or aggravated by his employment, triggering the 180-day notice period. *See id.* § 34A-3-103.

¶19   Finally, Stevenson argues that the Commission's application of the statute to the facts of this case functions as an unconstitutional statute of repose. A statute of repose "prevents suit a statutorily specified number of years after a particular event occurs, without regard to when the cause of action accrues." *Velarde v. Board of Reviews of Indus. Comm'n*, 831 P.2d 123, 125 (Utah Ct. App. 1992). Because "a statute of repose may bar the filing of a lawsuit even though the cause of action did not

arise until after the action was barred and although the injured person was diligent in seeking a remedy," statutes of repose may run afoul of the Open Courts Clause of the Utah Constitution unless there is "an effective and reasonable alternative remedy" or "there is a clear social or economic evil to be eliminated." *Id.* at 126 (cleaned up).

¶20    Utah Code section 34A-3-108 is not a statute of repose because it does not bar a suit as untimely "without regard to when the cause of action accrues." *See id.* To the contrary, it expressly provides that the notice period does not run until "180 days after the cause of action arises." Utah Code Ann. § 34A-3-108(2)(a) (LexisNexis 2021). Nor did the Commission apply the statute in a manner that barred Stevenson's claim before the cause of action arose. Stevenson had all the information necessary to file a claim under the Act no later than June 5, 2016. Therefore, we find no merit in Stevenson's claim that the Commission's application of the statute violates the Utah Constitution's Open Courts Clause.

## CONCLUSION

¶21    The Commission's interpretation of the relevant notice statute was correct, and its determination that Stevenson did not notify Employers of his occupational disease claim within 180 days after that claim arose was supported by substantial evidence. Accordingly, we decline to disturb the Commission's decision dismissing Stevenson's claim.

——————————