2024 UT App 33

# THE UTAH COURT OF APPEALS

LOIS SMITH,
Appellee,
*v.*
VOLKSWAGEN SOUTHTOWNE, INC.,
Appellant.

Opinion
No. 20220957-CA
Filed March 14, 2024

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 130908362

Rodney R. Parker and Nathanael J. Mitchell,
Attorneys for Appellant

Michael A. Worel, Colin P. King, and Walter M.
Mason, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1     A plaintiff in a personal injury case, Lois Smith, obtained a
verdict of $2,700,000, but that verdict and judgment were set aside
by the trial court. Three years later, the Utah Supreme Court
determined that the trial court had erred in setting aside the
verdict. On remand, the trial court awarded over $400,000 in
postjudgment interest. The defendant, Volkswagen SouthTowne,
Inc. (Volkswagen) appeals the award of interest. We affirm.

BACKGROUND

¶2      In December 2013, Lois Smith sued Volkswagen for, among other claims, product liability and negligence after a cracked fuel line in the car she purchased resulted in her suffering carbon monoxide poisoning.

¶3      In June 2018, following an eight-day trial, the jury returned a verdict in favor of Smith. The jury awarded Smith $2,700,000 in general damages. On August 27, 2018, the trial court entered judgment on the verdict (2018 Judgment) for $2,700,000 in general damages plus $10,030.35 in costs, *see* Utah R. Civ. P. 54(d) (providing for an award of costs to the prevailing party), as well as "[postjudgment] interest at the rate of 3.76%" pursuant to Utah Code section 15-1-4.

¶4      Volkswagen filed motions for judgment as a matter of law,[1] *see id.* Utah R. Civ. P. 50, and a new trial, *see* R. 59.[2] In April 2019, the trial court granted Volkswagen's motion for judgment as a matter of law and conditionally granted the motion for a new trial. Smith appealed.

¶5      Three years later, in June 2022, the Utah Supreme Court reversed the trial court's decision. *See Smith v. Volkswagen*

---

1. Throughout the briefing, the parties refer to the motion as one for judgment notwithstanding the verdict. However, the motion was a rule 50 motion for judgment as a matter of law. *See Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶¶ 2–4, 513 P.3d 729. To avoid perpetuating the use of old terminology, we use the language consistent with the current Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 50 advisory committee notes to 2016 amendment (noting the change in terminology).

2. Volkswagen also filed a motion for relief from judgment, *see* Utah R. Civ. P. 60(b), which the court determined was moot in light of its decision on the other two motions.

*SouthTowne, Inc.*, 2022 UT 29, ¶ 4, 513 P.3d 729. Our supreme court ordered "the jury's verdict reinstated." *Id.* ¶ 150.

¶6    Following the remand, on September 19, 2022, the trial court entered a new judgment (2022 Judgment) identical to the 2018 Judgment except that it included accrued interest "beginning August 27, 2018 in the amount of $407,588.56 with a per diem of $279.17 after August 26, 2022." This brought the total judgment entered to $3,117,618.91. The trial court also noted that it denied Volkswagen's objection to the proposed judgment, an objection which Volkswagen made to the award of postjudgment interest from August 28, 2018, to the date of the 2022 Judgment.[3] Volkswagen appeals.

## ISSUE AND STANDARD OF REVIEW

¶7    On appeal, Volkswagen argues that the trial court erred by awarding Smith postjudgment interest from the date of the 2018 Judgment. "We review the award of postjudgment interest, a question of law," for correctness. *Bailey-Allen Co. v. Kurzet*, 876 P.2d 421, 427 (Utah Ct. App. 1994).

## ANALYSIS

¶8    Volkswagen's argument against the trial court's order of postjudgment interest is twofold—first, that the court misinterpreted the postjudgment interest statute and second, that the court violated the mandate rule. We address each argument in turn.

---

3. Recognizing that the principal amount of the judgment was no longer subject to challenge, Volkswagen paid Smith $2,710,030.35 in August 2022, withholding only the postjudgment interest amount.

## I. Postjudgment Interest Statute

¶9    In Utah, "final civil and criminal judgments of the district court and justice court shall bear interest at the federal postjudgment interest rate . . . plus 2%." Utah Code § 15-1-4(3)(a). The parties' dispute on appeal is not over whether postjudgment interest applies here; rather, the disagreement is over what point in time the court had statutory authority to apply the interest. In reaching its decision to award postjudgment interest from the 2018 Judgment date to the present, the trial court relied on *Hewitt v. General Tire & Rubber Co.*, 302 P.2d 712 (Utah 1956), where our supreme court stated that it could not "see any good reason why [a] plaintiff should lose [postjudgment] interest because [a] defendant was able to convince the trial court to make an erroneous ruling." *Id.* at 714.

¶10    Volkswagen argues that the trial court erred in relying on *Hewitt* as the statutory scheme has since changed. At the time of the decision in *Hewitt*, the postjudgment interest statute stated that "any judgment rendered on a lawful contract" was subject to postjudgment interest. *Id.* at 713 (cleaned up). The statute was amended in 1999 to more broadly address other civil and criminal judgments. *See* Act of Feb. 23, 1999, ch. 279, § 1, 1999 Utah Laws 919, 919. Then in 2014, the legislature added the modifier "final" to judgments which fell under subsection 3(a), and it defined "[f]inal judgment" as "the judgment rendered when all avenues of appeal have been exhausted." *See* Act of Mar. 13, 2014, ch. 281, § 1, 2014 Utah Laws 1174, 1174. In 2017, the legislature deleted the definition for final judgment but kept "final" as a modifier for judgments in subsection (3)(a). *See* Act of Mar. 9, 2017, ch. 379, § 1, 2017 Utah Laws 2090, 2090. The legislature also added subsection (4) to outline postjudgment interest for a "judgment under $10,000 in an action regarding the purchase of goods and services," but that subsection did not employ the "final" modifier. *Id.* Any amendments since that time do not include changes relevant here. *See* Utah Code § 15-1-4. Volkswagen would have this court apply the definition for final judgment deleted from the 2014 version of

the statute, arguing that despite this deletion, there is "no indication that the legislature intended" the statute as amended today "to change the nature of the finality requirement for judgments over $10,000." Volkswagen further contends, in reference to subsections (3)(a) and (4), that "reading the statute to permit interest from the date of entry of both 'final' judgments over $10,000 and 'judgments' under $10,000 violates the principle that readings should be avoided that render portions of the statute redundant." We disagree.

¶11  The statute is not redundant under its express terms, as subsection (3)(a) applies to judgments not covered by subsection (4) while subsection (4) applies only to certain judgments under $10,000. *See id.* § 15-1-4(3)(a)–(4). We acknowledge that throughout the statute's evolution, the legislature could have chosen to amend the statute to combine the two subsections into a single subsection, but the legislature did not do so, nor did it have to.

¶12  More importantly, we cannot ignore the legislature's choice to leave final judgment undefined when it deleted the definition from the current postjudgment interest statute. When interpreting a statute, "we presume that the legislature was deliberate in its choice of words." *2 Ton Plumbing, LLC v. Thorgaard*, 2015 UT 29, ¶ 31, 345 P.3d 675 (cleaned up). If the legislature removes or replaces language in a statute, "in the absence of any clear legislative indication to the contrary, we take the [l]egislature at its word." *State v. Wallace*, 2006 UT 86, ¶¶ 10–12, 150 P.3d 540; *see id.* ¶ 16 (concluding that courts cannot insert terms that the legislature "explicitly removed by amendment"); *accord Joe v. Lebow*, 670 N.E.2d 9, 19 (Ind. Ct. App. 1996) ("When a statute contains language which is deleted by the legislature, we presume that the legislature intended the deletion to represent a change in the law."); *State v. Eversole*, 889 S.W.2d 418, 425 (Tex. App. 1994) ("It is a general rule of statutory construction that when the legislature amends a particular statute and omits certain language of the former statute in its amended version, the

legislature specifically intended that the omitted portion is no longer the law. Every word excluded from a statute must be presumed to have been excluded for a reason."); *Nello L. Teer Co. v. North Carolina Dep't of Transp.*, 625 S.E.2d 135, 138 (N.C. Ct. App. 2006) ("[I]f the legislature deletes specific words or phrases from a statute, it is presumed that the legislature intended that the deleted portion should no longer be the law."). So, quite the opposite of Volkswagen's argument is true here, as the choice to delete the final judgment definition is in fact a clear indication that the legislature intended the nature of the finality requirement to change. Following our practice for statutory interpretation, we presume the legislature's choices to delete the final judgment definition and add subsection (4) for postjudgment interest on certain judgments under $10,000—noticeably excluding the modifier "final" in that subsection—was deliberate. *See 2 Ton Plumbing*, 2015 UT 29, ¶ 31. As Smith points out, with the word "final" appearing only in subsection (3)(a), the sole effect of the definition's deletion was to alter the meaning of subsection (3)(a) rather than subsection (4). Thus, having determined that the deleted definition of final judgment no longer applies, we are left to determine how to define the term in the context of this case.

¶13    "When the legislature borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 33, 424 P.3d 22 (cleaned up); *see also Rueda v. Utah Labor Comm'n*, 2017 UT 58, ¶ 33, 423 P.3d 1175 ("The legislature is entitled to invoke specialized legal terms that carry an extraordinary meaning. And when it does so we credit the legal term of art, not the common understanding of the words." (cleaned up)); *id.* ¶ 107 ("[W]e presume that the legislature is aware of legal terms and their meanings . . . ."). As the legislature chose not to define final judgment, which is a legal term of art, we will use the traditional legal definition. Based on the legal tradition of centuries of practice in our judicial system, a final

judgment "ends the controversy between the parties" prior to appeal. *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979) ("As a general rule an appeal may be taken to this court only from a final order or judgment. A judgment is final when it ends the controversy between the parties litigant." (cleaned up)); *see also Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 34 n.22, 201 P.3d 966 ("We have defined a final judgment as one that ends the controversy between the parties." (cleaned up)); *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 ("An appeal is improper if it is taken from an order or judgment that is not final . . . . For an order or judgment to be final, it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case. In other words, a judgment is final when it ends the controversy between the parties litigant." (cleaned up)).

¶14     Here, the 2018 Judgment came when, at the conclusion of an eight-day trial, the jury returned a verdict in favor of Smith and the trial court entered judgment on the verdict. There was nothing left to be decided beyond whether to file an appeal and later whether to grant a motion for judgment as a matter of law; therefore, the 2018 Judgment was a final judgment to which postjudgment interest statutorily applied. *See* Utah Code § 15-1-4(3)(a). Thus, though the statute has gone through numerous iterations since the time of the *Hewitt* decision, the statutory scheme as it stands today does not impact the applicability of *Hewitt*, and postjudgment interest applies from the date of the 2018 Judgment. Smith should not lose her interest because Volkswagen "was able to convince the trial court to make an erroneous ruling." *Hewitt*, 302 P.2d at 714.[4]

---

4. Volkswagen points to *Mason v. Western Mortgage Loan Corp.*, 754 P.2d 984 (Utah Ct. App. 1988), which this court distinguished from *Hewitt*. However, while *Hewitt* provides a near precise factual and procedural comparison to the present case, the

(continued…)

## II. Mandate Rule

¶15 Volkswagen further argues that the trial court's violation of the mandate rule led it to erroneously rely on *Hewitt v. General Tire & Rubber Co.*, 302 P.2d 712 (Utah 1956). "Under the mandate rule, issues resolved by an appellate court bind the trial court on remand, and generally bind this court should the case return on appeal after remand." *Wasatch County v. Okelberry*, 2015 UT App 192, ¶ 30, 357 P.3d 586, (cleaned up), *cert. denied*, 364 P.3d 48 (Utah 2015). As noted by the trial court, the facts in *Hewitt* and the case before us are "materially similar." In *Hewitt*, the jury returned a verdict in favor of the plaintiff. 302 P.2d at 712. The clerk signed and entered the judgment on the verdict. *Id.* The defendant "renewed its motion for directed verdict," which the trial court granted, thereby setting aside the verdict and judgment entered. *Id.* The court then entered a new judgment in favor of the defendant. *Id.* On appeal, our supreme court reversed the judgment, ordering that the trial court's judgment be set aside. *Id.* The only relevant discrepancy between *Hewitt* and this case is that in *Hewitt* the supreme court ordered "the judgment upon the jury verdict be reinstated." *Id.* In the present case, the supreme court ordered "the jury's verdict reinstated." *Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 150, 513 P.3d 729. Volkswagen clings to this slight difference by arguing that because of it, *Hewitt* is not controlling, and the trial court violated the mandate rule as "the supreme court did not order the original judgment 'revitalized.'"

¶16 While our supreme court used the language of "jury's verdict" rather than "judgment upon the jury verdict" when it

---

procedural differences in *Mason* make it unhelpful. *Mason* involved a bench trial after which the judge entered the original judgment in favor of the defendant rather than the plaintiff. *Id.* at 985–86. Therefore, as Volkswagen acknowledges, nothing was being reinstated, and thus *Mason* is too procedurally askew from the issue before us to persuade us that it is applicable here.

remanded after reversing the trial court's grant of judgment as a matter of law, the supreme court gave no indication that it intended any different result on remand from that which occurred in *Hewitt*. Smith points out that other courts addressing this issue have recognized that it is necessary "to consider not merely the literate form but the substance of the reversal on the previous appeal," *see Espinoza v. Rossini*, 257 Cal. App. 2d 567, 572–73 (Ct. App. 1967), and provides us with a helpful, factually similar case from the Missouri Court of Appeals, *see Redican v. K Mart Corp.*, 785 S.W.2d 578 (Mo. Ct. App. 1990). In *Redican*, as in *Hewitt* and the case before us, the jury returned a verdict in favor of the plaintiff, which the trial court then set aside, granting the defendant's motion for judgment as a matter of law. *Id.* at 578. The appellate court reversed the trial court's ruling and reinstated the jury's verdict for the plaintiff. *Id.* at 580. In *Redican*, the court anticipated a question would arise about when postjudgment interest should run and addressed it by stating,

> The judgment is reversed and this cause is remanded with directions to enter judgment on the verdict returned on January 25, 1989. The judgment entered pursuant to this remand shall be effective from January 25, 1989, and shall bear interest from that date.

*Id.* Smith's argument is well taken: the language in the appellate court's mandate in *Redican* to "enter judgment on the verdict," *id.*, is equivalent to the court's mandate in the present case ordering the "jury's verdict reinstated," *Smith*, 2022 UT 29, ¶ 150.[5] While it is helpful that the *Redican* court explicitly stated that postjudgment interest applied from the date of the original judgment, *see* 785 S.W.2d at 580, it was not necessary for our

---

5. As further evidence that *Redican v. K Mart Corp.*, 785 S.W.2d 578 (Mo. Ct. App. 1990), is an appropriate illustrative case here, both *Redican* and *Hewitt* rely on *Reimers v. Frank B. Connet Lumber Co.*, 273 S.W.2d 348, 349 (Mo. 1954).

supreme court to do the same given Utah's prevailing caselaw. Under *Hewitt*, postjudgment interest runs from the date of the original judgment as there is no "good reason why [a plaintiff] should lose [postjudgment] interest because [a defendant] was able to convince the trial court to make an erroneous ruling." 302 P.2d at 714. And *Hewitt* applies because, again, there is no indication that the supreme court here intended a different result than what occurred in *Hewitt* by reinstating the verdict rather than by explicitly reinstating the *judgment on the* verdict. This slight difference in language is immaterial as its effect is to revitalize both the verdict and judgment when a judgment as a matter of law is reversed. *See, e.g.*, *Brown v. Medical Mutual Liab. Ins. Society of Md.*, 599 A.2d 1201, 1204–05 (Md. Ct. Spec. App. 1992) ("Here, the [judgment as a matter of law] was, in fact, reversed on appeal, which means that the original jury verdict must be reinstated as if it had never been eliminated by the trial court. . . . Simply mandating that judgment be entered 'on the verdict of the jury,' was sufficient to trigger the award of [postjudgment] interest from that date." (cleaned up)).

¶17    Thus, the mandate rule was not violated because whether the supreme court's mandate is to reinstate the verdict or *judgment on* the verdict is inconsequential, and the result is the same—the original judgment is revitalized.

CONCLUSION

¶18    The trial court properly awarded Smith postjudgment interest from the date of the 2018 Judgment, as the court acted within its statutory authority and in line with the applicable caselaw. Furthermore, the trial court did not violate the mandate rule as there is no indication that our supreme court intended any different result from that which occurred on remand when the trial court awarded the postjudgment interest. We affirm.

———————