**2024 UT App 153**

### THE UTAH COURT OF APPEALS

DARDEN RESTAURANT AND XL INSURANCE AMERICA INC.,
Petitioners and Cross-respondents,

*v.*

CHINYU JAMES SUN,
Respondent and Cross-petitioner,

*v.*

LABOR COMMISSION,
Respondent.

Opinion
No. 20230743-CA
Filed October 24, 2024

Original Proceeding in this Court

Eric J. Pollart and Jeffrey A. Callister,
Attorneys for Petitioners and Cross-respondents

Aaron J. Prisbrey, Attorney for Respondent and
Cross-petitioner

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

OLIVER, Judge:

¶1      Chinyu James Sun suffered injuries to his neck and shoulder when he slipped and fell at work. He never reported the incident to his employer, Darden Restaurant (Darden), who was notified only when he filed a workers' compensation claim 300 days later. An administrative law judge (the ALJ) found Sun had failed to comply with the reporting requirements of the Workers' Compensation Act, *see* Utah Code § 34A-2-407 (the Reporting Statute), and dismissed his claims with prejudice.

¶2      Sun sought review with the Appeals Board (the Board) of the Utah Labor Commission (the Commission). The Board

affirmed the ALJ's determination that Sun's shoulder injury was barred for lack of timely notice, but it remanded the matter to the ALJ for further proceedings regarding Sun's neck injury. In light of a material dispute in medical opinions from various physicians, the ALJ appointed a medical panel. After reviewing the medical panel's report, the ALJ ordered Sun's employer to pay temporary total disability compensation as well as necessary and ongoing medical care for his neck injury. Sun sought review of the ALJ's determination because it did not address his shoulder injury. The Board affirmed the ALJ's award of benefits to Sun for his neck and affirmed the ALJ's prior decision that Sun's shoulder claim was barred. Both Darden and Sun brought petitions for judicial review. We decline to disturb the Board's decision as to the shoulder claim, but we set aside the Board's order as to the neck claim because both were barred as untimely.

BACKGROUND

¶3     Sun was employed as a manager at a restaurant owned by Darden. In July 2020, Sun was carrying a large plastic tub at work that he had filled with ice when he slipped and fell, hitting his head on the wall and his right shoulder on the ice machine. Sun landed on his back with the ice bucket on top of him. Sun's "whole upper body hurt but his right shoulder hurt the worst." Two of Sun's coworkers helped him up, and Sun was able to finish his shift. He did not file an accident report with Darden, but he claimed to have left a voicemail message with Darden's director of operations (the Director) about the accident (the Accident).

¶4     Before the Accident, Sun had been treated for complaints related to pain in both of his shoulders and was scheduled to have surgery on his right shoulder in August 2020. A week before that surgery, Sun's orthopedic surgeon ordered an MRI after Sun complained of being in "a lot more pain" and mentioned something about a fall. The MRI showed "a moderate sized near full-thickness bursal sided tear" on Sun's right shoulder. Sun

underwent surgery on his right shoulder in August, as scheduled, and was placed off work afterwards.

¶5 In December 2020, Sun returned to his surgeon, complaining of pain in both shoulders and cramping in his neck. When an MRI of his right shoulder showed no tear, Sun underwent an MRI of his cervical spine,[1] which showed "joint disease and degenerative disc disease." The following month, Sun reported to the Director a years-earlier fall at work that had injured his left shoulder when he was employed at one of Darden's restaurants in Colorado. In February 2021, the Director then filed a workers' compensation claim for the accident in Colorado. That claim was ultimately denied.

¶6 That same month, Sun was evaluated by a physiatrist for pain management. In his treatment notes, the physiatrist described Sun as a "51-year-old gentleman, who 3 years ago fell while at work injuring his left shoulder and his neck." Sun's surgeon declared him fit to go back to work "full duty with no restrictions regarding his shoulders." Sun also went to an orthopedic spine surgeon for surgical recommendations to alleviate his neck pain.

¶7 In April 2021, Sun filed a claim with the Commission based on the Accident, seeking an award of temporary total disability benefits, medical expenses, and ongoing medical care. The ALJ held an evidentiary hearing in June 2022. Sun testified about the Accident as described above. Sun's testimony confirmed that, as a manager who had to file reports when employees were injured, he was aware of how to report workplace accidents.

¶8 On cross-examination, Sun initially asserted that on the day of the Accident, he left a voicemail with the Director in which

---

1. The cervical spine is "the neck area" of the spine and "consists of the first seven vertebrae"—C1 to C7—of the spine. *Cervical Spine,* Cleveland Clinic, https://my.clevelandclinic.org/health/arti cles/22278-cervical-spine [https://perma.cc/6CLS-L2KQ].

he described the Accident. When Darden's counsel pointed out that Sun had claimed in his deposition that the voicemail did not describe the Accident or his injury, he admitted, "Yeah. I did not discuss the detail of the [Accident]." Sun also claimed that the Director called him a couple of days later at work to discuss the Accident. Sun then admitted that if an employee came to him with an injury, he would "report [it] right away" but explained he did not report the Accident to Darden because he already had surgery scheduled for his shoulder the following month, "so [he] wasn't too worried about it." Darden's counsel asked Sun, "So [you've] got a surgery coming right around the corner and you make the decision, 'Ah, I'm not going to report it as work-related'; is that correct?" Sun replied, "Correct." Sun also admitted he filed the claim with the Commission for the Accident after becoming aware that his claim in Colorado for the previous injury was denied.

¶9     Sun then called the Director to testify. She testified she was not aware Sun had injured himself at work in July 2020 until she received a notice that he had filed his claim with the Commission. The Director testified that Sun "did not" leave her a voicemail about the Accident and that Sun's claim that she called him a couple of days after the Accident to ask about the Accident was "not accurate." The Director stated that the only claim Sun reported to her was in relation to the alleged injury to his left shoulder that occurred when he was working for Darden in Colorado. The Director confirmed, "I was never made aware of any slip and fall in Utah. Had I been made aware, I can promise you, in all of my years and experience, I would have instantly reported it into the system." She testified there was no investigation into the Accident because Sun never reported it. The Director testified she was aware of Sun's August 2020 surgery for his shoulder and that she made arrangements "to provide coverage to the restaurant . . . for the time that he had requested off" to have surgery. But she reiterated that those arrangements were "not related to any claim or any injury related to work." The Director stated that as a manager, Sun could have filed his own claim and had access to a portal with the phone number for reporting.

¶10 In its ruling, the ALJ concluded Sun failed to comply with the Reporting Statute because he did not notify Darden "of his July 1, 2020, industrial accident within 180 days of the injury date as required by the statutory provision." Sun's claims were dismissed with prejudice.

¶11 Sun appealed the ALJ's ruling to the Board. In its review, the Board noted there is "a material distinction between [Sun's] knowledge of his right-shoulder injury and his cervical-spine injury" and addressed the notice issue as it pertained to each injury. Concerning the shoulder injury, the Board affirmed the ALJ's determination that Sun knew "he should have reported [his] right-shoulder injury, but elected to delay notice of such injury for his own reasons" and did not notify Darden until he filed a claim in April 2021. Concerning the neck injury, the Board found dispositive the fact that "Sun's cervical-spine complaints were first addressed by [Sun's surgeon] in December 2020 and first causally connected to [the Accident] by [his orthopedic spine surgeon] in February 2021."

¶12 The Board then interpreted the notice requirement of the Reporting Statute in light of *Interstate Electric Co. v. Industrial Commission*, 591 P.2d 436 (Utah 1979). In particular, the Board quoted an observation from Arthur Larson's treatise, *The Law of Workmen's Compensation*, included at the end of *Interstate's* eight-paragraph opinion, that "the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of [their reporting statutes for work-related injuries] to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Id.* at 438 (cleaned up). The Board then looked to whether Sun "purposely chose not to report" his shoulder and neck injuries or "whether he did not have sufficient knowledge of the injuries until his treating physician attributed them to his work activities." Again, turning to *Interstate*, the Board engaged in a prejudice analysis and concluded that Sun's failure to report his neck injury did not prejudice Darden, so "strict application of the 180-day

deadline for reporting [Sun's] cervical-spine injury is not appropriate for the cervical-spine claim." The Board remanded the matter to the ALJ for further proceedings regarding Sun's neck claim.

¶13 Because the neck claim involved "a medical dispute between physicians regarding medical causation, date of medical stability[,] and necessary medical care," the ALJ referred the matter to a medical panel for evaluation. Over Darden's objection, the ALJ accepted the medical panel's conclusion that the Accident was "the cause of [Sun's] neck and upper extremity radiculopathy and pain" and ultimately ordered Darden to pay temporary total disability compensation to Sun of $76,050, as well as necessary and ongoing medical care for his neck condition.

¶14 Sun appealed the ALJ's ruling to the Board yet again, challenging the scope of the award for his neck injury and the dismissal of his shoulder claims. On review, the Board affirmed the ALJ's decision. The Board reiterated its determination that Sun timely notified Darden of his neck injury in April 2021, dating the 180-day period from when his "cervical-spine complaints were first addressed by Sun's surgeon in December 2020 and first causally connected to [the Accident] by [his orthopedic spine surgeon] in February 2021."

ISSUES AND STANDARD OF REVIEW

¶15 Darden seeks judicial review of the Board's award, arguing that the Board erred in determining that Sun had timely reported his neck injury.[2] In a cross-petition, Sun seeks judicial review of the Board's dismissal of his right-shoulder injury as untimely.

---

2. Darden also argues that the Board abused its discretion in refusing to exclude the medical panel's report as being unsupported by the medical evidence and that the Board erred in finding medical causation. Because we conclude that Sun's claims are time-barred, we need not reach either of these challenges.

Both of these issues involve a challenge to the Board's interpretation of the Reporting Statute. "We review the [Board's] interpretation of statutory provisions for correctness." *Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 12, 484 P.3d 1195.

## ANALYSIS

¶16    The ALJ ruled that Sun did not meet the statutory notice requirement for his injuries because he did not report the Accident to Darden within 180 days of when it occurred. The Board, however, bifurcated the notice issue, analyzing it separately for each injury and determined that the relevant factor was not the date Sun sustained the injuries but the date he became aware of them and their causal connection to the Accident. Darden contends this is an incorrect interpretation of the Reporting Statute.[3] We agree.

¶17    "When interpreting a statute, our primary objective is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself." *In re J.E.*, 2023 UT App 3, ¶ 32, 524 P.3d 1009 (cleaned up). "We read the plain language of the statute as a whole" and "follow the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592 (cleaned up).

---

3. Sun asserts that we lack jurisdiction over this issue because Darden did not sufficiently raise it below. We can easily dispatch this argument, however, because not only did Darden raise the filing deadline in its Answer, the ALJ issued a ruling on this specific issue and Sun appealed that ruling to the Board, which also issued a decision. Thus, the "preservation requirement is satisfied [because] the issue was raised at the administrative level so that the agency . . . had the opportunity to rule on it." *Palmer v. St. George City Council*, 2018 UT App 94, ¶ 12 n.4, 427 P.3d 423.

¶18 The Reporting Statute states, in relevant part, as follows:

> An employee sustaining an injury arising out of and in the course of employment shall provide notification to the employee's employer promptly of the injury. . . .
>
> . . . An employee is barred for any claim of benefits arising from an injury if the employee fails to notify within . . . 180 days of *the day on which the injury occurs*.

Utah Code § 34A-2-407(2)–(3) (emphasis added). As noted, the Board looked to *Interstate Electric Co. v. Industrial Commission*, 591 P.2d 436 (Utah 1979), to guide its analysis of the Reporting Statute and relied upon the court's favorable citation of the observation from Arthur Larson's *The Law of Workmen's Compensation* that courts "read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Id.* at 438.

¶19 The statute in effect at the time of *Interstate*, however, was significantly different from the Reporting Statute.[4] First, the prior statute required injured employees to notify their employers of an injury within forty-eight hours or suffer a fifteen-percent reduction in their compensation. *See* Utah Code § 35-1-99 (1953). The statute's tight timeframe was designed "to afford an

---

4. The legislature repealed the prior statute in 1990, *see* Act of Apr. 23, 1990, ch. 69, § 13, 1990 Utah Laws 247, 254, and enacted a new statute that set the reporting requirement at 180 days, *see* Utah Code § 35-1-97(2) (1990) ("Any employee who fails to notify his employer or the commission within 180 days of an injury is barred for any claim of benefits arising from the injury."). The statute was later renumbered as Utah Code section 35A-3-407. *See* Act of July 1, 1997, ch. 240, § 150, 1996 Utah Laws 893, 896.

opportunity to the employer to make an investigation into the facts and to provide medical treatment." *Id.* Second, the statute considered prejudice to the employer because it allowed employees to challenge the fifteen-percent reduction if "the employer was not, in fact, . . . misled or prejudiced" by the delay. *Id.* In *Interstate*, our supreme court needed to determine whether the employer was prejudiced by the employee's one-day delay in reporting his work injury because the plain language of the statute in effect in 1979 allowed employees to raise a defense to the required fifteen percent reduction in compensation based on lack of such prejudice. *Interstate*, 591 P.2d at 437–38. And it is understandable that a forty-eight-hour deadline may have given courts pause about "the acute unfairness of a literal application" of the statute's language, *see id.* at 437–38, particularly where the reporting delay in *Interstate* was only one day.[5] But the statute at issue in this case no longer includes any of the provisions that the court was analyzing in *Interstate*. *See* Utah Code § 34A-2-407(2)(a). The Board failed to consider these distinctions in relying on *Interstate* in its analysis.

¶20    "If the legislature deletes specific words or phrases from a statute, it is presumed that the legislature intended that the deleted portion should no longer be the law." *Smith v. Volkswagen SouthTowne, Inc.*, 2024 UT App 33, ¶ 12, 547 P.3d 198 (cleaned up), *petition for cert. filed*, May 15, 2024 (No. 20240517). That is precisely what happened here. In 1990, the legislature changed the scheme for the timely reporting of work injuries. Instead of a very short amount of time to report an injury—forty-eight hours—the legislature extended the time to 180 days, or nearly six months. The legislature deleted both the option for reduced compensation if the employee failed to meet that deadline and the

_____

5. In *Interstate*, the employee reported his injury after "three days." *Interstate Elec. Co. v. Industrial Comm'n*, 591 P.2d 436, 437 (Utah 1979). It is unclear if the employee reported the injury on that third day or on the day following the three days. We presume the delay in reporting was one day, but acknowledge it could have been two days.

corresponding ability to nonetheless receive full benefits if the delay in reporting did not prejudice the employer. It is thus clear that the statute at issue in *Interstate* is no longer the law.

¶21 Moreover, "[o]ur legislature knows how to [include exceptions to a filing deadline] when that is its intent; indeed, it has done so . . . in other sections of the Utah [Labor] Code." *See Utah Assoc. Mun. Power Sys. v. 3 Dimensional Contractors Inc.*, 2024 UT App 35, ¶ 51, 547 P.3d 829. The Utah Occupational Disease Act, which provides compensation for "any disease or illness that arises out of and in the course of employment and is medically caused or aggravated by that employment," expressly includes such an exception. *See* Utah Code § 34A-3-103. As explained by this court in *Stevenson v. Labor Commission*, 2021 UT App 101, 499 P.3d 911, "employees who have sustained an occupational disease . . . arising out of and in the course of employment must promptly notify their employer . . . within 180 days after the cause of action arises" or they are "barred from a claim of benefits." *Id.* ¶ 13 (cleaned up). The statute defines when the "cause of action arises" to be "when the employee first: (i) suffers disability from the occupational disease; and (ii) *knows or in the exercise of reasonable diligence should have known*, that the occupational disease is caused by employment." *Id*. (emphasis added) (cleaned up). Had Sun filed a claim under this statute, then his awareness of his neck injury and its cause would have mattered, as the Board believed it did. But the statute at issue here—the Reporting Statute in the Workers' Compensation Act—has no such language about tolling the reporting deadline until discovery of the injury. Thus, the 180-day period cannot run from the date an employee becomes *aware* of the injury but must run from "the *day* on which the injury *occurs*." *See* Utah Code § 34A-2-407(3)(b) (emphasis added).

¶22 Only a few cases address the Reporting Statute's 180-day deadline, and they uniformly uphold the straightforward 180-day filing requirement. *See, e.g.*, *Green v. Labor Comm'n*, 2013 UT App 165, ¶ 8, 306 P.3d 824 (holding that the employee's claim for workers' compensation benefits was barred based on "the absence of affirmative evidence establishing that the accident was

reported"); *Leavitt v. Labor Comm'n*, 2008 UT App 349U, para. 3 (holding that the employee's claim for workers' compensation benefits was barred because she did not report her injury to her employer "within 180 days of the incident"); *Owen v. Labor Comm'n*, 2006 UT App 479U, para. 3 (per curiam) (holding that "although [the employee] had reported pain, she did not specify that the pain was related to her work" so her formal claim, filed over a year after her accident, was time-barred).

¶23   Having concluded that the Reporting Statute required Sun to report his injury within 180 days of the Accident, we examine whether Sun did, in fact, timely report the Accident. At the hearing before the ALJ, Sun testified that he both left a voicemail message for the Director about the Accident and spoke with her about it several days later when she called him. The Director testified that she did not receive a voicemail from Sun or talk with him about the Accident. After hearing this conflicting testimony from Sun and the Director, the ALJ found the Director's "testimony credible that [Sun] did not report the fall that occurred on July 1, 2020." In its decision on Sun's motion for review of the ALJ's decision, the Board adopted the ALJ's findings of fact. The Board then concluded that "the preponderance of the evidence does not show that [Sun] reported the injuries from the July 2020 accident until he filed his application for hearing" with the Commission on April 27, 2021, some 300 days later. Sun does not challenge either the ALJ's credibility findings or the Board's conclusion that Sun did not report the Accident within 180 days of the day it occurred. Nor does he identify any other evidence he presented to the Commission that demonstrated he notified Darden of the Accident within 180 days of when it occurred.[6]

---

6. At the hearing, Darden's primary opposition to Sun's claim for benefits was that the Accident did not occur. Sun testified that he reported the Accident to the Director (via voicemail the night of the Accident and in a telephone conversation a few days later), presumably in an effort to demonstrate that the Accident did, in fact, occur. Sun therefore had both the opportunity and the

(continued…)

Thus, the Board's determination that Sun did not report the Accident within 180 days stands unrebutted.

¶24　In sum, it was inappropriate for the Board to map its interpretation of the Reporting Statute to a case that turned on such an outdated and dissimilar statute. In doing so, the Board erroneously "read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Interstate Electric Co. v. Industrial Comm'n*, 591 P.2d 436, 438 (Utah 1979). We are reluctant "to infer language and meaning that does not appear on the face of the statute or when doing so would be inconsistent with the legislature's statutory scheme." *Williamson v. Farrell*, 2024 UT App 111, ¶ 32 (cleaned up). Instead, we reiterate that "the best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). Here, the Reporting Statute was amended to remove the language relied on by the Board. The Reporting Statute plainly states that a claim is barred if the injury is not reported within 180 days of the accident, provides no mention of prejudice to the employer as an exception to this rule, and does not toll the deadline for any reason. And the Board's conclusion that Sun did not report his injury within 180 days stands unchallenged. Therefore, we set aside the Board's determination that Sun's claim for benefits related to his neck injury was not time-barred, and we decline to disturb the Board's determination that Sun's claim for benefits related to his shoulder injury was time-barred.

## CONCLUSION

¶25　The Board correctly interpreted the relevant statutory provision as it related to the shoulder injury but not as it related to the neck injury. Accordingly, we decline to disturb the Board's

---

motivation to present at the hearing any evidence showing that he reported the injury.

dismissal of Sun's claims for benefits related to his shoulder injury, and we set aside the Board's award based on Sun's claims for benefits related to his neck injury.

_____